Merrimack,
June 20, 1940. } No. 3152.

JOHN HAVENS *v.* ATTORNEY-GENERAL & *a.*

116

*Demond, Sulloway, Piper & Jones (Mr. Franklin Hollis* orally), for the plaintiff.

*Thomas P. Cheney,* Attorney-General, *Frank R. Kenison,* Assistant Attorney-General, *Richard F. Upton,* and *Robert W. Upton (Mr. Cheney* and *Mr. Robert W. Upton* orally), for the defendants.

MARBLE, J.   The statute under review imposes a tax "at the rate of fifteen per cent upon the value of all tobacco products sold

at retail in this state . . . measured by the usual selling price." The tax in the opinion of a majority of the court is a sales tax and not an occupation tax as such taxes are defined in *Opinion of the Justices*, 82 N. H. 561, 563.

The efficient and economical collection of a tax on particular commodities when sold requires some such system of purchasing and affixing stamps as that prescribed by the act in question. The tax is none the less a sales tax because the purchase of stamps in advance of actual sale is required. The ultimate burden of the tax falls upon the consumer, and the tax is not irretrievably paid when the stamps are procured, for the statute itself provides that the Tax Commission "shall redeem any unused, uncancelled stamps presented by any licensed distributor or dealer, at a price equal to the amount paid therefor."

Since this court has twice declared that sales taxes, though possessing many of the features of excises, may be validly imposed (*Opinion of the Justices*, 84 N. H. 559, 576; *Opinion of the Justices*, 88 N. H. 500), the essential inquiry would appear to be whether the selection of tobacco as the subject of the tax is so arbitrary and unreasonable as to violate the legal requirements of classification.

The assumption which underlies much of the plaintiff's argument that an act of the legislature imposing a tax should be considered primarily as an exemption statute is believed to be wholly without foundation. "No case is to be found holding a tax invalid because of the exemption of other property by either express provision or failure to enumerate it as taxable." *Canaan* v. *District*, 74 N. H. 517, 540.

The tax system of this State is highly selective, and much property remains untaxed. This fact is well illustrated by the statutes taxing incomes and franchises. The former (P. L., *c.* 65) applies only to income derived from dividends and interest, the latter (Laws 1931, *c.* 124) only to the franchises of gas and electric utilities.

It is true that the decision in *Conner* v. *State*, 82 N. H. 126, holding the income-tax law constitutional, does not turn primarily on the question of classification, although counsel in the argument of the case emphasized the fact that "the act taxes only interest and dividend income as distinguished from the returns of business and personal service." 380 Briefs and Cases, 256. The question receives adequate treatment, however, in *Opinion of the Justices*, 84 N. H. 559, 569, holding valid the proposed franchise-tax statute, afterward enacted as Laws 1931, *c.* 124. In the course of that opinion it is said:

"The further contention has been made that the class prescribed is too narrow, that if the franchises of these utilities are taxed other franchises must be. The power of the legislature to classify property as taxable or non-taxable is a broad one, and the validity of its exercise has rarely been called in question. Classification of property by kind has always been recognized as proper. So, too, classification by use is said to be permissible. 1 Cool., Tax., s. 280. So long as there is a reasonable line of demarcation, and there is no attempt to make taxability depend upon a classification of owners, the legislative power in this matter is supreme."

The line of demarcation between tobacco and other commodities long ago received legislative recognition in this state by the enactment of statutes restricting the sale or gift of tobacco to minors. P. L., c. 379, ss. 19, 20. Indeed, so distinctively does tobacco stand in a class of its own that it is generally considered by economists as an appropriate subject of taxation. " . . . if there is any one point in taxation on which the experience of modern nations is agreed, that point is the fitness of tobacco to be taxed." Olmsted, "The Tobacco Tax," 5 Quar. Jour. of Economics, 219.

The statement of the court in Opinion of the Justices, 82 N. H. 561, 563, that there is no constitutional authority for "the imposition of a charge upon the exercise of a common right" has reference to "the ordinary transactions of private life" which "contain no element subject to supervision either under the police power or as things affected with a public use." Ib.

If the franchises of gas and electric utilities may be selected for taxation while the franchises of other utilities (water companies, for example) and those of all other corporations engaged in the multitudinous activities of business remain untaxed, it is difficult to understand why tobacco cannot be selected for taxation to the exclusion of other commodities.

In short, the conclusion seems inescapable, in view of the wide latitude of discretion which legislatures possess in matters of this kind, that the imposition of the tax in question is neither arbitrary nor unreasonable as those terms are employed with reference to legislation of this character.

In answer to an inquiry by the Senate concerning the taxation of wood and timber, it was said in Opinion of the Justices, 84 N. H. 559, 575: "It appears to us that . . . a tax may legally be laid upon wood and timber upon the event of severance. Such a law would include a distinctive class of property, would be imposed upon a certain event

and would apply to all similarly situated. The classification would be supported by abundant reasons; and the incidence of the tax would depend upon a characteristic event, not common to other property."

With slight changes in phraseology, this language can be applied to sustain the tax in question. It includes a distinctive class of property. It applies to all similarly situated. The classification is supported by abundant reasons: tobacco for human consumption is not a necessity, and its fitness as a subject of taxation has been generally recognized. The incidence of the tax depends upon a characteristic event, a sale, which has been held to be a proper criterion for determining the incidence of a tax.

"The adoption of a tax rate differing from the average rate throughout the state is proper" (*Opinion of the Justices*, 88 N. H. 500, 505) and the exemption of tobacco used for insecticides and other agricultural purposes is not unreasonable (*Ib.*, 511). " . . . the legislature, under the broad powers which it enjoys of selecting and classifying subjects for taxation, may very well relieve the farmer from a tax imposed upon those" who make a different use of the commodity taxed. *Wisconsin &c. Association* v. *Commission*, 207 Wis. 664, 673.

The method of determining the value is eminently practical, and there is nothing to indicate that the Tax Commission, whose duty it is to administer the act, cannot ascertain the usual selling price of tobacco products with reasonable accuracy. The fact that no deduction is made for the Federal excise tax paid by the manufacturers is unimportant. The retailer does not pay the Federal tax "except as it is included in the price charged by the wholesaler." Annotation 110 A. L. R. 1485, 1491, citing *People* v. *Werner*, 364 Ill. 594.

Nor is the provision allowing the distributor a discount on the purchase of stamps discriminatory in any substantial sense. It is obviously designed to meet the objection raised in *Opinion of the Justices*, 88 N. H. 500, 503, that the taxpayer cannot be made the collector of the tax without adequate compensation. There are other grounds, however, on which the provisions may be sustained. It is stated as a fact in the reserved case that licensed distributors supply ninety-five per cent of the tobacco products sold at retail in the State. As suggested by defendants' counsel: "The discount to distributors may also be sustained as a reasonable method of preventing evasion of the tax. There are approximately 4,904 retail outlets of tobacco products in the State and only 109 wholesale out-

lets or distribution centers, including 12 operated by chain systems. The five per cent discount tends 'to encourage distributors to affix such stamps' . . . and, in so doing, reduces the number of outlets which the Tax Commission must supervise closely. By reducing the number of persons handling the stamps, the opportunities for fraud and evasion are also reduced, and the efficiency of supervi on is increased."

The separate stores or vending machines of a chain organization are treated as retail outlets, and each must be operated under a dealer's license. The organization itself, because of the extent of its business and the method by which it distributes products from a central supply station to the individual units of the system, is properly classed as a distributor.

The slight "fractional departure" from the established rate of fifteen per cent occasioned by the use of stamps of "denominations of not less than one-half cent" is too trifling to merit serious consideration. "The question of equality is a practical one." *Keene* v. *Roxbury*, 81 N. H. 332, 338.

The license fee which dealers are required to pay is uniform and nominal. It differs radically from the tax prescribed by the proposed act of 1927 (House Bill No. 180, *pp.* 30-34) to which plaintiff's counsel refer in their brief. The bill in question sought to impose on the retailer a "license tax" ranging from $2.50 to $75, depending on the size of the community in which he did business. This was deemed to constitute an occupation tax. *Opinion of the Justices*, 82 N. H. 561.

Registration of dealers is essential to the proper administration of the law, and the fee required by the present statute covers hardly more than the clerical expense involved. It is not a tax. *State* v. *Forcier*, 65 N. H. 42. The sale of unstamped tobacco is made punishable by fine or imprisonment or both. Inspection is facilitated by reason of the license requirements and some measure of protection against unlawful competition is thereby afforded law-abiding licensees. Under these circumstances the nominal fee of one dollar charged the dealer for his license is unobjectionable.

The fact that the plaintiff may have suffered some loss of profits through diminished business because certain customers are buying cheaper products is of no materiality. "Taxes in themselves are economic charges which must be paid in some way by the person affected. They must either come from the surplus of the taxpayer, or the burden must be passed on to those with whom the taxpayer has economic relations. Except in pure theory it seems impossible

to have a single uniform system of taxation affecting all alike. The state in seeking objects for taxation must act selectively, placing the burden here, and exempting from it there." 23 Cornell Law Quar. 45. The expedient distribution of that burden, within constitutional limitations, is the task of the legislature, and it is the "universally accepted doctrine" that no legislative act shall be declared unconstitutional "except upon unescapable grounds." *Musgrove* v. *Parker*, 84 N. H. 550, 551. In the opinion of a majority of the court no such grounds exist in the present case.

*Petition dismissed.*

BRANCH and WOODBURY, JJ., concurred.

---

ALLEN, C. J., *Dissenting.* It seems to me that the decision is based upon a position which is a revolutionary departure from the views expounded and developed in this State in construction of the constitutional mandate of equality. It adopts a new theory of classification in conflict with that heretofore made the proper test, and by judicial process accomplishes what has been thought could be brought about only by constitutional amendment. The conception that if a subject of taxation has been, or may be, specially regulated in the exercise of the police power, it may be specially and exclusively taxed, is a radical change from the view understood heretofore to prevail that it must be in the public interest to exempt subjects not taxed in order to sustain the validity of the subject taxed. No contention respecting the existence of the right to classify arises. The inequality produced by taxing one form of property and not taxing another does not violate the principle of equality, provided the inequality is one that promotes the public welfare. Selection of a specific form of property for taxation without a public interest that other forms be exempted is believed to rest upon a theory of classification, the adoption of which reverses a long and uniformly accepted construction of our Constitution. That the selection may be made because of the subjection, actual or possible, of the property taxed to police regulation does not relieve it from the charge of an arbitrary character. A classification in which a subject is selected for taxation without regard to subjects exempted does not observe equality. The

equality among those paying the tax is not enough. There must be a proper reason for the exemption.

As the majority opinion is understood, it advances a doctrine that any article, or its sale, may be taxed, separately and exclusively if it is an appropriate subject of taxation, the test of appropriateness being that it is under some regulation of the police power, and is in a distinctive class of its own. Whether the subjection to regulation creates the class distinction, or whether the distinction may be based on other and additional grounds, is not clear. The favor of economists for the tax is pointed out. The favor hardly seems relevant. It also extends to progressive taxes, but that is no reason for validating them. But whatever the interpretation, and conceding the desirablity of the tax from an economic standpoint, the opinion adopts a formula which is considered so greatly at variance with the views of constitutional equality long and consistently advanced that a statement of the reasons for dissent seems demanded.

Classification in taxation is accomplished by taxing one kind or use of property and not taxing another. There being no tax on what is not taxed, it is necessarily exempt from taxation, and classification is thus established among taxables between those taxed and those not taxed. Exemptions which are reasonable may be made (*Thompson* v. *Kidder*, 74 N. H. 89, 97; *Opinion of the Justices*, 84 N. H. 557, 558). And one is reasonable if it may be deemed just. (*Opinion of the Justices*, 82 N. H. 561, 573). It is just if it may be considered for the welfare of the State, *i.e.*, an exercise of the protective power. *Opinion of the Justices*, 87 N. H. 490, 491; *Opinion of the Justices*, 88 N. H. 500, 510, 511. "The general object of all these exemptions is to promote the prosperity and welfare of the state. The policy is justified on the ground that the advantages arising from the exemptions largely exceed the disadvantages due to the inequality in taxation introduced by them, so that, upon the whole the public good is promoted." *Petition of Union &c. Bank*, 68 N. H. 384, 387, cited in *Opinion of the Justices*, 82 N. H. 561, 571.

"Classification creates inequality unless it reasonably promotes a matter of the general welfare." *Rosenblum* v. *Griffin*, 89 N. H. 314, 321. It is understood that this rule is a test for valid taxation as well as for valid police legislation. But it does not follow that because a subject may be specially selected for regulation, it may therefore be specially selected for taxation. The public interest as a reason for special regulation may be absent as a reason for special taxation. A reason of health, morals or safety to support regulation may

wholly fail as a reason to support taxation. To say that tobacco may be specially taxed because it may be specially regulated, is believed to be fallacious reasoning in construction of the constitutional requirement of equality.

The act taxing sales of tobacco products without taxing sales of other property necessarily exempts all other sales. Unless it is in the public interest that the sale of no property be taxed except of tobacco products, the rule of equality is disregarded. While relief from taxation is of public benefit, relief for one, to be valid, must be given to others similarly circumstanced. *Eyers Woolen Co.* v. *Gilsum*, 84 N. H. 1, 28, and cases cited. Otherwise the classification is one of unfair discrimination. To say that there is good public reason to tax the sale of tobacco products and of nothing else asserts that a public benefit is served by exempting from taxation the sale of each and every form of property except tobacco products. The proposition seems indefensible.

The statement appears in *Canaan* v. *District*, 74 N. H. 517, 540, that "no case has been found" holding a tax on property invalid because of the exemption of other property. It is regarded as only a statement that no enacted tax legislation had been found to produce unfair discrimination rendering it invalid. It is not a statement that a tax on any item or subject of property is valid although it is not laid on other items or subjects similarly circumstanced. If it had such a meaning, then the rule of reasonable classification would be discarded. Nor is it a statement that a law taxing certain property is not one exempting other property. What is not taxed is necessarily exempted, and it is immaterial whether or not special statement of what is not taxed is made. Omission to tax, however accomplished, produces exemption. If out of ten subjects or forms of property only one is taxed, the others are exempted. In equality of effect a law taxing only tobacco or its sale, with no statement in it that other commodities are not taxed, is no different than if the law contained such a statement. That a constitutioual difference may exist by reason of the form of expression in two laws differently framed but producing identical results, is not thought to be within proper interpretation. A tax statute which either by its terms or by its operation furnishes exemptions is, in that respect, an exemption statute, and any legal difference of classification produced by designating one as primarily an exemption statute, while the other is only to be regarded secondarily, if at all, as having an exemption purpose and policy, seems based on narrow and unsustainable grounds. The obvious

intent of the legislature was not to tax, and hence was to exempt, all subjects of taxation except tobacco or its sales. It is as clear in such respect as though the purpose and policy had been set forth in terms. If the cited statement in the *Canaan* case should be otherwise construed, it may be said that it was *dictum*, that the opinion containing it was concurred in by no other member of the court unless one, and that the summary of the opinion was that the express exemption under consideration was "not an unreasonable exercise of the protective power." *Ib.*, 545.

It is not questioned that many exemptions from a sales tax are proper. It could not be successfully claimed that a law taxing luxuries and exempting necessaries would be invalid. The economic welfare of the State might thereby be well served. And even the exemption of certain luxuries might be sustained as a measure in furtherance of the cause of public health or of some other concern of public welfare. But it is not perceived how it can be found to be for the public welfare, in taxing the sale of tobacco products, to exempt the sale of such articles, for example, as smoking accessories, chewing gum, playing cards, certain forms of cosmetics, and certain forms of jewelry. If, however, the protective power may be properly exerted in advancing the general interest by taxing sales of tobacco exclusively, then it would seem that any selection might be found just and reasonable and the legislative will be uncontrolled. The line between reasonable and arbitrary discrimination is at times difficult to draw, but it is thought that all fair minded persons would say that no public advantage is furthered by granting relief from the taxation of the sale of every article, whatever its kind or use, except tobacco products.

The majority opinion stresses tobacco as standing "in a class of its own," for the purpose of making it "an appropriate subject of taxation." Conceding a plausible appropriateness, equality is denied if it is separately and alone taxed, when no public benefit is gained by not taxing other subjects. The thought is expressed that the police power has been employed in regulation of its sale to show "a line of demarcation" between it and other commodities. But the sales of many other commodities are under regulation. If it may be harmful to health to smoke tobacco, so also impurities may make food harmful to eat. Regulation to prevent the impurities is as appropriate as regulation to prevent smoking. But regulation is not thought to make either food or tobacco an appropriate subject of exclusive taxation merely because of the fact that they may be harmful, or

because of the regulation. The form of regulation may vary, but whatever the form, a restriction upon the sale is imposed. The "line of demarcation" is only a line marking the difference of manner of regulation. The restrictions of sales of narcotics (Laws 1935, *c.* 156) and of certain weapons (P. L., *c.* 149) are far heavier than those of sales of tobacco. Regulations permitting sales only upon certain conditions are restrictions, and may be substantially prohibitive.

If it be assumed that the sale of tobacco products may be regulated to the extent of complete prohibition, as in the case of poisons, intoxicants and certain weapons, it remains that no such regulation has been undertaken. The common right, or the right of all in common, to sell has not been taken away, and the right exists as freely and fully as in the case of sales in general. All that is taken away by regulation is the right to sell to minors. No license for permission to sell is required. When in regulation the common right is taken away, and the right to sell exists only under special permission or license, the imposition of a price for the privilege, to produce revenue as well as to meet enforcement expense, is valid. The price paid is a license fee and not a tax, and the State's dictation of terms is not a violation of equality, so long as there is no unfair discrimination among those applying for the privilege. The law under consideration is not a license law, destructive of the common right, and while the common right to sell tobacco continues, the sale may not rightfully be subjected to a tax merely because the right may be destroyed, if it rightly may be. From the standpoint of equality, in special applications any article or substance, the now subsisting common right to sell which may be taken away, cannot, it is thought, be demarked from tobacco, in taxing its sale. The similarity of circumstances is too pronounced. Although the legislature may select its objects of regulation and prescribe the extent of regulation, it may not select an article, or its sale, for taxation, merely by reason of its power to regulate or of an exercise of its powers, not going to the extent of destroying the common right. The majority opinion, however, in effect holds that it may.

The act under consideration is not a police measure, but is solely one for revenue. While a statute may combine both features, a revenue act is not also a police regulation for the mere reason that it might have been made one. The power to exercise the police power does not prove its exercise. Was it exercised, is the inquiry.

The preamble to the act states only a revenue purpose and the regulations relate only to collection of the tax. It is probable that

only revenue was the object of the law. If it is possible that regulation, in a purpose to lessen consumption because the use of tobacco products was thought to be harmful, the possibility is not enough. What was not probably intended, although it may have been, is not the enactment. What the probabilities are, is determinative. That is the rule of construction to which it is understood there are no exceptions. It cannot be reasonably inferred or assumed that anything other than revenue was in mind. An inference of a purpose of protection would be a fictitious one, contrary to all the evidence, and not rightly to be countenanced. In this aspect imagination may not properly displace realism. A constitutional quality of the act ought not to be supported by the assumption of a fact which cannot honestly be believed to exist. If the law is constitutional only if a certain condition exists, the condition must be found to exist. The normal presumption that the legislature intends to pass no invalid laws is to receive its due recognition, and may be irrebutable. But when the purpose of what is enacted is clear, the presumption has no application. Otherwise, no legislation could be invalidated. *State* v. *Gerry,* 68 N. H. 495, 503. The question then is, regardless of the legislative interest to act within constitutional bounds, has it done so?

But even if the act were a protective as well as a revenue measure, the exercise of the protective power, short of licensing provisions taking away the common right to sell enjoyed by all, would not justify taking tobacco as a sole subject of taxation.

As the logical effect of the decision, any article, even though a necessary of life, might be deemed "appropriate" for taxation, if it is or may be under regulation in connection with its sale, and accordingly be taxed separately and by itself. But a law taxing only bread, for example, would not be validated by including in the law requirements for the weight and quality of the bread. The opinion sets forth no test of appropriateness which would defeat such a tax. The line of demarcation between tobacco and many other commodities in respect to regulation is at most in the manner of regulation. The prohibition of the sale of tobacco to minors is no different, from the standpoint of regulation, than the requirements of measure, quality, and manner in the sale of innumerable articles. Appropriateness being a matter of legislative discretion as the test adopted, the requirement of equality would be confined within a narrow range of application. This is not regarded as equality in the constitutional sense.

Exemptions based on generic classifications of property arc readily sustainable, because of the evident public interest to relieve the class exempted. But as to sub-classifications, their development requires consideration of the balance between the public interest and private gain. "Aiding a private manufacturing corporation is not a public purpose" (*Eyers Woolen Co.* v. *Gilsum*, 84 N. H. 16), although it may be of great economic advantage to the community where it is located. Aiding storekeepers in general may be a public purpose, but to aid some of them without aiding others can be justified only by a line of distinction based on a public benefit for those aided not applicable to those not aided. If the stock in trade tax were limited to that of shoe stores, the burden of public expense upon their proprietors would be constitutionally unfair, because no fair ground of public interest for the differentiation between them and other storekeepers in general could exist. The favor to those enjoying the exemption would be personal and not public in benefit. This example is no more extreme than that of the taxation of tobacco sales. The physical characteristics of tobacco are not a feature of constitutional distinction. Nor is its use as a luxury a reason for distinction when the sales of all other luxuries are exempt. Nor does the regulation of its sale make it an appropriate subject of taxation when the sale of many other things are under regulation, and when regulation is no purpose of the act. " . . . all exemptions from taxation are practically equivalent to a direct appropriation." (*Canaan* v. *District*, 74 N. H. 517, 537, cited in *Eyers Woolen Co.* v. *Gilsum*, 84 N. H. 1, 10), and an appropriation to all storekeepers except of tobacco is an unfair expenditure. It is true that by the act the consumer ultimately pays the tax. But that is immaterial. It needs no argument that the tax added to the "usual selling price" is a burden on the business. The tax on rented real estate may be passed along to the tenant, by economic process, but the tax affects rentability and thereby value. Whether the dealer or seller pays the tax or is only a tax-collector is merely a point of technique, in respect to the tax burden. The dealer's business is burdened by the tax because the price to his customers is increased, in the same manner that the federal tax adds to the cost. It would be a strange view of the constitutional doctrine of equality if the tax were invalid if he were the taxpayer but would be valid if he were a collector, treating a sale as made up of the two items of regular price and the tax. The tax is on an event or incidence. The statement that " 'Property can be classified for tax purposes. The taxpayers cannot.' The

test for taxability here proposed relates strictly to the property." (*Opinion of the Justices*, 84 N. H. 559, 569), is applicable.

To the extent classification can be applied in taxing sales, it can be applied to taxing ownership. It would be thought a novel discrimination if the stock in trade of a shoe store might be exempt from taxation while taxing that of a food store. Each is distinctively in a class of its own, as much as tobacco is, and the conduct of a food store is under regulation in contrast with that of a shoe store. The parallel with the tobacco sales tax persists. Unless some ground of the public welfare in exempting the shoe dealer's stock while taxing that of the proprietor of the food store, might be discerned, the discrimination, it is thought, would be unjust, as a favor to the individual rather than a benefit to the public. It is said that tobacco is a luxury, but so, for example, are diamonds. The public advantage in taxing tobacco, or its sales, only for revenue, and not taxing diamonds, or their sales, is not perceived; the advantage is entirely personal and individual for the seller or buyer of diamonds, and that is an inequality of which it is thought the tobacco seller or buyer may justly complain.

As has been stated, facts which justify classification for regulation do not for that reason justify a corresponding classification for taxation. Regulations for the weight, measure and quality of articles offered for sale vary in their application to different kinds of articles, but selection for taxation according to variations of regulation would be arbitrary. Real estate may be zoned for special uses, but the right to classify for taxation, as, for example, between single residence and two tenement zones, does not thereby follow. Even when the common right to sell an article is taken away by the requirement of a license, a license fee for revenue purposes may be invalid. A license requirement to sell drugs and medicines does not necessarily connote a right to levy a special tax on their sale. It is only when regulation might go so far as to completely destroy, that a license fee, amounting in practical reality to a tax for revenue, may be charged. The legislature may exercise the police power in full, or partial extent, or not at all, in respect to a particular subject of application. But in respect to taxation, the selection of property taxed is more limited in range and specification. Equality in taxation and equality in regulation do not coördinate.

The majority opinion argues that since it has been thought that the franchises of gas and electric utilities may be taxed while the franchises of other utilities and of corporations other than utilities

are not, tobacco may therefore be selected for taxation to the exclusion of other commodities. The opinion ignores the basis for the special taxation of the franchises of such utilities. They may operate only upon the permission and approval of the public service commission, and it is the "right, privilege, or franchise," as a natural or artificial monopoly, which "does not belong to the utility as of common right. It is acquired by the state's grant. It is desired because it has been taken out of the field of common right; and its exclusive character may give it value, ... comparison has been made with the right to use a manufacturing plant. This lacks the essential element that in the case of the public utility competition is excluded, ... No one not a public utility can engage in the business (P. L., c. 236, s. 4; *Ib.*, c. 240, s. 21), and the meaning of the proposed act is the same as though it read 'all property used in the public utility business shall be taxed.'" *Opinion of the Justices*, 84 N. H. 559, 568, 569. Whether the *Opinion* expresses the view that if gas and electric utility franchises may be taxed to the exclusion of the franchise of other utilities, is doubtful. Reference was made to the contention that "if the franchises of these utilities are taxed other franchises must be." (*p.* 569). By "other franchises," other utility franchises do not appear to have been in mind, but only franchises of corporations other than utilities. The discussion proceeds and is conducted on that basis. But if an opposite construction of the language used were adopted to include other utilities, of which water companies are now suggested as an example, it may be said that the exemption of their franchises might be reasonable, because of their special service to the public. Light, heat and power may be produced by other agencies than gas and electricity, while there is no substitute for water as an indispensable essential of life.

In respect to the tax on income in the form of dividends and interest, other forms of income may be exempt from the tax, as forms of general property may be, so long as they are an exercise of the protective power. Rents may obviously be relieved, since the tax on the property producing them is concededly excessive in economic considerations. Likewise, earnings for service may be exempt, since they are the chief means of support for most persons. And if capital gains may be considered or treated as income, the public interest in economic development justifies their exclusion.

Any parallel between a tax on tobacco sales only and one on wood and timber upon the event of severance is one of words rather than realities. The latter tax would apply to "a distinctive class of prop-

erty," and its incidence "would depend upon a characteristic event, not common to other property." *Opinion of the Justices*, 84 N. H. 559, 575. The tax could not be correlated with other taxes (*Ib.*, 575), and is thus analogous to the legacy and inheritance tax. The sale of tobacco is an incident or event common to the sale of all property. And, as has been pointed out, it is not a distinctive class of property in comparison with many other forms of property similarly circumstanced. If the issue, as to which no opinion has been rendered, were whether one kind of timber, such as pine, might be taxed only on severance, while all other kinds were taxed annually as real estate owned, the comparison would be logical. Wood and timber have generic standing as a class of property, while tobacco and its sale have common attributes with other forms of property. If tobacco and its sale may be specially selected for taxation as being a distinctive class of property, it would seem that any article, like playing cards for amusement, jewelry for adornment, and perfume for vanity, might be separately classified. If regulation becomes a factor, then, as already pointed out, many articles and commodities are under regulation in connection with their sale.

The State has stressed "kind and use" as reasons for classification, citing *Opinion of the Justices*, 84 N. H. 559, 569. But taxation of one kind of property and exemption from another kind, and taxation of property when used one way and its exemption when used another, must not be arbitrary. "So long as there is a reasonable line of demarcation," the legislative action may not be questioned. *Ib.*, 569. "Selection must be made for a just reason," (*Opinion of the Justices*, 82 N. H. 561, 576), and a just reason is one reasonably in the public interest. The exemption from tax when tobacco is used for purposes of utility inuring to the public welfare is undoubtedly valid, but to exempt other sales for no useful purpose of public interest seems as clearly invalid. It is true that tobacco is a kind of property in distinction from all other kinds. But tobacco itself may be assorted into different kinds. In their species cigars, cigarettes and pipe tobacco are of different kinds. It is not the physical character of an article that determines kind, for purposes of classification, but its relation in some aspect of public concern. The legislature not regarding tobacco smoking as a harmful practice except by minors, for purposes of taxation tobacco cannot be regarded as a different kind of property than many luxuries, the sale of some of which, as has been stated, is even under greater restriction than of tobacco sales. Nor does the fact that tobacco is used in one manner or for

one purpose while other luxuries are used in a different manner or for other purposes alone create a constitutional difference sufficient to warrant a classification in taxation.

Buildings and lands are of various kinds and distinction from each other in use. But valid classification for tax purposes among them requires a public advantage for any to be exempted. Jewelry is of different kinds, and diamonds are distinctive from pearls, but, it is considered, not for classification in taxation. Milk is a distinctive article of food, but the fact that its sale is placed under regulation in certain areas does not show that the sale may be taxed while the sale of no other foods is taxed.

The inherent vice of the decision is in its effect to relieve individuals from taxation when no public interest is thereby gained. The proposition that no man should pay any part of his neighbor's share of the public expense of government needs no citation for its support. But if the sellers of goods which there is no public interest to exempt from tax are relieved, then in some measure the burden from which they are relieved falls upon the sellers whose sales are taxed. They are in every just and reasonable way similarly circumstanced. The injustice is particularly striking in the case of sales of narcotics, certain weapons and other harmful or dangerous substances, so far as the common right to sell them subsists. The incidental private benefit that may derive from the public benefit of an exemption is one thing. The private benefit that accrues from an exemption not in the public interest is another. The former is not a grant to individuals. The latter is.

Other questions bearing on the validity of the act have not been considered. This dissent discusses the act only upon its primary, underlying and general conflict, considered to be inherent in it, with the principle of equality embodied in the state, if not also in the Federal, Constitution.

---

PAGE, J., *dissenting.* If the statute imposes a sales tax, I agree with the Chief Justice that it is void because it creates an improper classification. His opinion follows the judicial theory of classification consistently held in New Hampshire for over a hundred years. I see no reason to depart from that theory, particularly since the people have acquiesced in it for several generations. The theory has been freely criticized by some, but the people have never indicated any

desire to repudiate it by exercising their undoubted privilege of writing into the Constitution by amendment such words as they please. Until the implied will of the people changes, I think we must adhere to long-accepted interpretations.

I think also that the statute is void as an attempt to levy a disproportional tax. The reasons for the thought involve a statement of the nature of property taxes.

Property may be taxed in two distinct ways. Ever since 1784 it has been permissible to tax property because of its existence in the hands of somebody. The resulting levy we commonly call "the general property tax." It depends upon ownership or possession. It is levied upon the owner or possessor of the property at fixed annual intervals. It is measured by the "full and true value" of the property in money. An estimation of value is required in its assessment. The estimation must be related to salable or marketable value. *Cocheco Mfg. Company* v. *Strafford*, 51 N. H. 455, 482. "Such value is the market value, or the price which the property will bring in a fair market, after reasonable efforts have been made to find the purchaser who will give the highest price for it." *Winnipiseogee &c. Co.* v. *Gilford*, 67 N. H. 514, 517. While "true value" thus has relation to a "selling price," it is not to an actual selling price, but to a presumptive one, "the usual selling price." It is not what the property has brought, but what in the nature of the case it probably would bring, if sold. And this is true equally whether the property is real estate inherited from a long line of ancestors, never sold and not on the market, or whether it is a commodity held in stock in trade with the intention of selling.

The "general property tax" must be proportional. That means that in the same taxing district values assessed must be equal, and the rate the same. So the rule of proportion requires that comparable values and the same rate shall be applied to cattle, stocks in trade, real estate and all other property. And the same rate and basis of valuation must be applied to all commodities held in possession for sale. Since the "general property tax" is laid only once each year, on April 1, and the valuation is of that date, the fluid character of stocks in trade requires their valuation as of the average throughout the year, whereas the static character of other property makes the ascertainment of value on April 1 sufficient as a measure. Equality and proportion as between two uses of property are thus attained.

Since 1903 another form of taxing property has been permitted.

But this form of tax is not levied upon the property because of its existence in ownership or possession (because it is property in hand). Unlike the "general property tax" it is not incident to the status of the property as something in being, but to some happening or event with respect to the property. Such an event may be the passing of property by will or inheritance (the legacy and succession tax). Or it may be the passing of income from debtor to creditor and from corporation to shareholder (the interest and dividends tax), or, if the legislature willed, other forms of income, including the passage of salaries and wages. Or it might be the passing of property by sale from wholesaler to retailer or from retailer to consumer.

Such distinctive taxes, incident to the happening of an event (the passing from hand to hand) rather than to the existence of the property (in hand), need not be proportional to the "general property tax." That is, they may be assessed at a different rate and at different times. (But, as the Chief Justice has shown, a retail sales tax must operate alike on all retail sales which cannot be distinguished upon reasonable and just grounds).

The two forms of tax differ in the time of application and the measure applied. The "general property tax" is applied at a fixed annual date, though collected later; the sales tax is applied when the sale happens, though typically it also is collected later. The "general property tax" is recurrent. A given sales tax never recurs, since a given sale happens but once. The measure also differs. The measure of the "general property tax" is "true value," which is synonymous with a presumptive sales value estimated with respect to the mere assumption of a sale which may never occur. The sales tax is measured by no presumptive or even probable test, but by the realistic test of what the property has actually brought. The distinctions as to time and measure have heretofore been brought to the attention of the legislature. *Opinion of the Justices*, 77 N. H. 611, 621. These distinctions are so clear and simple that it is easy for the legislature to enact a sales tax if it chooses. Has the legislature, in this instance, indicated the intention to lay a tax on the sales of tobacco products? In my opinion, the contrary is true.

The statute is entitled "An Act To Eliminate the Direct State Tax on Real Property by Means of a Tax on Tobacco Products." This suggests no more than the displacement of a part of the "general property tax" by a tax of the same order or character. If a sales tax had been intended, the apt title would have ended with the words "a Tax on the Sales of Tobacco Products."

The preamble also is significant. It recites that the direct State tax can be eliminated by "a levy upon tobacco products at the rate of fifteen per cent of the retail selling price, which among other results will impose a tax of one cent on each ten cigarettes." The "retail selling price" may, as already seen, be the measure of a retail stock in trade tax. So far, then, we have no evidence of a clear intention to levy a tax upon the actual receipts from sales, which is the only measure of a sales tax. On the contrary, the definitely expressed intention is to levy one cent upon every ten cigarettes, without respect to their actual sale, but merely with respect to their being on hand with the purpose of sale.

The act provides (Section 5): "A tax is hereby imposed at the rate of fifteen per cent upon the value of all tobacco products sold at retail." So much of the act, and so much only, might point to an intention to levy a sales tax. But the administrative provisions negative the intention. It would have been easy to provide administrative features consistent with a sales tax, but this was not done.

Quite to the contrary, the administrative provisions point to a tax upon tobacco products in hand. Payment of the tax is "evidenced by affixing stamps to the smallest packages containing the tobacco products." These stamps must be purchased in advance from the tax commission, either for cash or upon credit secured by a bond (Section 7). Instead of that, a metering machine may be used, but set for a certain number of cancellations for which advance payment is made or credit is secured (Section 8). Distributors must affix the stamps before sale (Section 11). Retailers must affix them within twenty-four hours after coming into possession of unstamped property (Section 12), without reference to the time when, if ever, the property is sold.

The result is that the tax is levied and collected before sale and as a matter of possession in hand rather than as an incident to the passing from hand to hand by sale. A dealer in tobacco products pays the tax upon goods held in possession, for sale, it is true. Prior to the passage of the act, he paid a "general property tax" upon the goods thus held. The incidence is of the same character as before. There are, to be sure, two distinctions. (1) The measure is on every item taken into stock, not the average value of the stock held. (2) The rate is several times that formerly applied. Viewed as a tax upon property in hand, the tax is highly disproportional on both accounts.

The measure of value directed by the act is of first importance in

arriving at the legislative intention. Section 5 makes the "value of all tobacco products sold" equivalent to "the usual selling price." "Usual selling price" is defined by Section 1 as "the normal retail selling price of tobacco products as determined by the tax commission." This makes the commission the assessors. But the assessors are circumscribed by the act in the process of valuation. They are directed to consider "the generally established price of tobacco products at retail stores in this state for a period of at least two years before such determination, and the wholesaler's price, usual dealers' profit, and advertised prices both within and without the state." A "generally established price . . . at retail stores" is a good measure of "the true value" (the presumptive selling price) of retail stock in hand, but infirm as a measure of receipts gained in the passing from hand to hand by sale. Moreover, the application of a two-year test, ignoring market changes, might tend to inaccurate valuation, particularly as to actual sales receipts. "The wholesaler's price" and the "usual dealers' profit," if placed together in proper balance, might be of use in valuing property in hand, though neither alone would be of much help for any purpose. "Advertised prices" within the state would be of some aid in establishing values in hand, but not for determining the value of actual sales. It is difficult to see how "advertised values without the state" could be more than remotely helpful in any event.

But the real object of the act is most clearly gathered from the mandate to the tax commission to consider "cut-rate" prices and quantity discounts allowed by retailers as evidence that the "usual selling price" is higher than such "sale" or bargain prices. Let us see where this leaves the "cut-rate" dealers. A real sale is a "sale" only in name. No fact ascertained from the happening of a sale is the test and measure of the tax, but something else. The tax, the act says, is to be measured precisely as property in possession is measured—by a presumptive, not an actual sales price. For purposes of the tax certain ideal sales, at the highest price only, are to be considered. A mass of actual sales at lower prices is to be totally ignored. Thus is attained the object declared in the preamble, to lay "a tax of one cent on each ten cigarettes." The measure, it cannot too often be repeated, is the measure of property in hand, and not the measure of its sale.

This intention is not negative; it is perfectly expressed. We cannot blink the fact that the act calls for a levy of fifteen per cent of a presumptive sales value (the measure of a "general property tax"),

not for one of fifteen per cent of the actual sales value (the measure of a sales tax). The legislature exhibited full knowledge of the fact known to all that there is often a real difference between the "usual sales price" as they carefully defined it and the true selling price. In deliberately choosing the former rather than the latter as the measure, they established their determination to levy a tax in the nature of one on property in possession, instead of a sales tax.

The clear incidence of the tax, both as to measure and as to time, is on property in hand. It is paid before sale, and its payment is evidenced by stamping before sale, sometimes long before sale. Yet the goods may never be sold at all. They may be stolen; they may be destroyed by fire or flood. Yet, though never sold, they have been taxed irrevocably. This result is not altered by the provision in Section 9 for the redemption of "unused, uncancelled" stamps. All packages must be stamped within twenty-four hours after they come into the hands of retailers. There is no warrant for supposing that a stamp is unused and uncancelled after it is affixed. Nor can it be supposed that a stamp affixed to a package stolen or destroyed can be redeemed by the taxpayer. The tax is irrevocably paid when the stamp is affixed.

The factual situation is too clear to admit of doubt or to be glossed over. The statute does not provide for a sales tax, but for a disproportional tax on goods in ownership and possession.

But even if this were a sales tax, even if it were properly classified, the tax would be unequal in its rate. I cannot overlook the fact so firmly seated in the minds of the legislators, that many dealers sell cigarettes at twelve and a half cents a package, while others sell at fifteen cents, nor the fact that the tax clearly contemplated is two cents a package, whichever price is received. On the "cut-rate" basis, the "sales tax" would be at the rate of sixteen per cent. On the "usual selling price" basis, it is thirteen and one third per cent. Sales on either basis are legal. There could be no just cause for discrimination between those who sell for one price and those who sell for another. If a sales tax was intended, we should have to conclude that the legislature knowingly set up the fiction that all sell at the "usual selling price"; that they knew that the contrary was true, and carefully met the situation by definitely excluding any consideration by the assessors of facts contrary to the fiction. That is, that they intended to levy a sales tax deliberately unequal. The inequality and discrimination would be in nowise separable from such a legislative scheme, and the whole scheme would have to fall

because of them. I do not think that the legislature intended to adopt any fiction of the sort. What they intended was a tax of two cents on every package in retail stock.

If the tax is one on property in possession, as I believe, it is disproportional and invalid. If it is a sales tax, as I cannot believe, it is invalid for innate and inseparable inequality and discrimination. It cannot be sustained upon any test known to our constitutional theory.