Request of House of Representatives
No. 6865

OPINION OF THE JUSTICES

March 20, 1974

The following request of the house of representatives for an opinion of the justices was adopted on March 7, 1974, and filed in this court on March 8, 1974:

"Whereas, section 4 of House Bill 34 of the 1974 special session, as introduced, seeks to impose a tax of five cents per barrel on refined petroleum products produced in this state; and

"Whereas, questions have been raised as to the validity of such tax under the constitutions of the United States and the State of New Hampshire; and

"Whereas, the best interests of the state and its citizens will be served by consideration of legislation which if enacted will conform to constitutional requirements;

"Now Therefore Be It Resolved by the House of the State of New Hampshire Assembled:

"That the justices of the Supreme Court be respectfully requested to give their opinion upon the following questions:

"1. Is the classification of refined petroleum products a legitimate classification of property under Article 6 of Part Second of the Constitution of New Hampshire?

"2. Is the exemption for refined petroleum products produced for distribution in New Hampshire a permissible exemption?

"3. Is the imposition of a barrel tax on refined petroleum products a valid exercise of the state's taxing powers?

"4. In all respects, other than those to which the preceding three questions relate, is the proposed statute constitutional upon its face?

"Be It Further Resolved:

"That the Speaker of the House transmit seven copies of this Resolution to the Clerk of the Supreme Court for consideration by said court."

Another request of the house of representatives for an opinion of the justices was adopted on March 13, 1974, and filed in this court on the same day:

"Whereas the House of Representatives by resolution adopted March 7, 1974, referred to the New Hampshire Supreme Court certain questions of law for an advisory opinion concerning the taxation provisions contained in House Bill No. 34, An Act relative to energy facility evaluation, siting, construction and operations and providing for a tax on refined petroleum products;

"And Whereas it has come to the attention of the House that it is desirable to propound a supplementary question concerning said bill in order to obtain as comprehensive an advisory opinion as possible in the circumstances;

"Now Therefore be it resolved by the House of Representatives that Request No. 6865 now pending in the New Hampshire Supreme Court be supplemented by adding thereto the following additional question:

"3-a. Would it be a valid exercise of the state's taxing powers to amend the taxing provisions of the proposed statute so as to provide that the tax in question be levied as an *ad valorem* tax, namely, a reasonable and uniform percentage of the fair value per barrel of such refined petroleum products?

"Be It Further Resolved that the Speaker of the House transmit seven copies of this supplementary resolution to the Clerk of the Supreme Court for consideration by said court."

The following answers were returned:

*To the House of Representatives:*

The undersigned justices of the supreme court submit the following reply to the inquiries contained in your resolution adopted March 7, 1974, as amended by your supplementary resolution adopted March 13, 1974.

House bill 34 is entitled "An Act relative to energy facility evaluation, siting, construction and operations and providing for a tax on refined petroleum products." The first part provides for the enactment of RSA ch. 162-H establishing a procedure for the review, approval, monitoring and enforcement of compliance in the planning, siting, construction and operation of energy facilities in this State including oil refineries. The second part (section 4 of the bill) would enact RSA ch. 78-C entitled "Refined Petroleum Products Tax" to the provisions of which your questions appear to be directed.

Question No. 1 reads as follows: "Is the classification of refined petroleum products a legitimate classification of property under Article 6 of Part Second of the Constitution of New Hampshire?"

It is well established that our legislature has liberal powers with respect to the classification of taxable property. *Opinion of the Justices,* 111 N.H. 131, 134, 276 A.2d 817, 819 (1971). A reasonable classification which is sufficiently inclusive to constitute a distinctive class will be upheld. *Opinion of the Justices,* 97 N.H. 543, 544, 81 A.2d 851, 852 (1951). The property to be taxed under the proposed bill is refined petroleum products which include "motor oil, kerosene, residual oil, fuel oil, gasoline, petroleum asphalts, road oils and other distillates and petrochemicals produced from crude petroleum by any person in this state."

The uses and storage of such products are regulated by law because they are highly inflammable and constitute a hazard to the public safety unless handled with care. RSA 153:14 (Supp. 1973); RSA 339:22-26 (Supp. 1973). Products of this class are generally recognized as subjects of

taxation. *Opinion of the Justices,* 88 N.H. 500, 505, 190 A. 801, 805 (1937). *See also Tirrell v. Johnston,* 86 N.H. 530, 536, 171 A. 641, 644 (1934). The method of their manufacture is distinctive and the end products are markedly different from all other kinds of fuel and energy. The incidence of the tax would depend upon a characteristic event not common to other property. *Havens v. Attorney General,* 91 N.H. 115, 119, 14 A.2d 636, 638 (1940).

We are of the opinion that refined petroleum products constitute a legitimate classification of property under N.H. CONST. pt. II, art. 6. *Havens v. Attorney General,* 91 N.H. 115, 14 A.2d 636 (1940); *Opinion of the Justices,* 94 N.H. 506, 52 A.2d 294 (1947); *Opinion of the Justices,* 111 N.H. 131, 134, 276 A.2d 817, 819 (1971). The answer to question No. 1 is "Yes".

Question No. 2 is the following: "Is the exemption for refined petroleum products produced for distribution in New Hampshire a permissible exemption?" It has been stated that under our constitution "[t]he power of the legislature to classify property into taxable and non-taxable groups includes power to grant reasonable exemptions from taxation . . . . 'If the distinction made is a reasonable one, in the sense that it may be deemed to be just, it is sufficient' [citation omitted]. The resulting inequality or discrimination against unexempted property is not fatal to the constitutionality of the exemption.'" *Opinion of the Justices,* 87 N.H. 490, 491, 178 A. 125, 126 (1935); *Opinion of the Justices,* 97 N.H. 533, 536, 81 A.2d 845, 848 (1951). The exemption of refined petroleum products produced for distribution and consumption within this State is intended to insure an adequate supply of these products thus promoting the State's general welfare. This constitutes a just reason for the exemption. *Opinion of the Justices,* 88 N.H. 500, 511, 190 A. 801, 808 (1937); *Opinion of the Justices,* 112 N.H. 32, 34, 287 A.2d 756, 757 (1972).

We must take judicial notice that there is no oil refinery presently operating in this State. Hence the volume of petroleum products to be produced by a future refinery, and the proportion to be sold here or in interstate com-

merce, must necessarily be conjectural. It is well-established federal law that state taxation, whatever its form, which discriminates against interstate commerce is invalid. The crude oil received from outside New Hampshire will have ceased to be in interstate commerce at the time of its refining in this State, which is the taxable event, and will not then have reentered the stream of interstate commerce. *Coe v. Errol,* 116 U.S. 517 (1886); *United Air Lines, Inc. v. Mahin,* 410 U.S. 623, 630 (1973). Thus no burden upon interstate commerce will result from the tax. *See Coe v. Errol,* 62 N.H. 303 (1882). The substantial services which this State will provide the refinery such as police and fire protection and public access roads, may rationally be considered to justify limiting the tax to products destined to be sold outside of New Hampshire. *United Air Lines, Inc. v. Mahin supra; see Northeast Airlines, Inc. v. Aeronautics Comm'n,* 111 N.H. 5, 273 A.2d 676 (1971). However, the determination of whether the exemption in question would render the tax on such products discriminatory against interstate commerce is within the jurisdiction of the federal courts in the last instance.

It follows that our answer to question No. 2 is "Yes" the proposed exemption is permissible under our constitution. However we cannot state unequivocally that it is also permissible under the Federal Constitution.

Your question No. 3 asks: "Is the imposition of a barrel tax on refined petroleum products a valid exercise of the state's taxing power?" The bill proposes a tax at a flat rate of five cents per barrel of petroleum products produced. The absence of a refinery in this State again renders necessary the making of certain assumptions on which to base an answer. If two refineries should locate in this State and produce various petroleum products each having a different value, the flat rate of five cents per barrel would result in a tax at different rates on the products of the two producers and thus violate the uniformity and proportionality requirements of N.H. CONST. pt. II, art. 5, and would be unconstitutional. In the absence of any factual basis by which to determine the effect of the

application of a barrel tax, we must answer question No. 3 "No".

Question No. 3-a reads as follows: "Would it be a valid exercise of the state's taxing powers to amend the taxing provisions of the proposed statute so as to provide that the tax in question be levied as an *ad valorem* tax, namely, a reasonable and uniform percentage of the fair value per barrel of such refined petroleum products?" As we said in answer to question No. 1, the petroleum products to be taxed under this bill constitute a distinctive class of property which has been generally recognized as a proper subject of taxation. *Havens v. Attorney General,* 91 N.H. 115, 14 A.2d 636 (1940). The incidence of the tax depends upon a characteristic or distinctive event, the refining of crude oil to petroleum products. The tax proposed by this question would be at a reasonable and uniform percentage of the fair value of each barrel of the refined products. We are of the opinion that such a tax would meet the requirements of the New Hampshire constitution. *Opinion of the Justices,* 94 N.H. 506, 52 A.2d 294 (1947); *see Opinion of the Justices,* 111 N.H. 131, 134, 276 A.2d 817, 820 (1971).

The local activity of refining would not be an integral part of interstate commerce and no other State could impose a similar tax for the incidence of refining which took place here. *Cf. Michigan-Wisconsin Pipe Line Co. v. Calvert,* 347 U.S. 157, 166 (1954). The fact that after refining, some part of the resulting products might be sold within the State and part outside in interstate commerce would not affect the power of New Hampshire to tax it. *Nashville C. & St. L.R. Co. v. Wallace,* 282 U.S. 249 (1932).

We are of the opinion that the tax proposed in question No. 3-a would not violate our State constitution or the Federal Constitution and would be valid. Our answer to question No. 3-a is "Yes".

Your question No. 4 reads: "In all respects, other than those to which the preceding three questions relate, is the proposed statute constitutional upon its face?" The limitation of time, if our answer is to be of assistance to you,

precludes review of sections other than section 4 of House bill 34, and we respectfully ask to be excused from further answer.

FRANK R. KENISON
LAURENCE I. DUNCAN
EDWARD J. LAMPRON
ROBERT F. GRIFFITH

I share the views of the other justices except as to question No. 2. Although the proposed statute is phrased in terms of an exemption of products "produced for distribution and consumption within the state", its effect is to impose a tax only on those products which enter interstate commerce.

There is no question but that interstate commerce can be made to pay a nondiscriminatory share of the tax burden. The cases cited by the other justices (*Coe v. Errol,* 116 U.S. 517 (1886) and *United Airlines, Inc. v. Mahin,* 410 U.S. 623 (1973)) were both cases where the tax fell equally on both intrastate and interstate commerce. In *McGoldrick v. Berwind-White Coal Mining Co.,* 309 U.S. 33 (1940), a tax on the sale of coal was upheld because it was applied equally to all coal sold whether it went into intrastate or interstate commerce.

Federal cases emphasize that any tax on interstate commerce must be nondiscriminatory and that a State may not promote its own economic advantages by placing a burden on interstate commerce. See for example *Henneford v. Silas Mason Co.,* 300 U.S. 577 (1937); *Alaska v. Arctic Maid,* 366 U.S. 199 (1961); *North Western Cement Co. v. Minnesota,* 358 U.S. 450 (1958); *H.P. Hood & Sons v. DuMond,* 336 U.S. 525 (1949); *Pennsylvania v. West Virginia,* 262 U.S. 553 (1923).

Because of the substantial loss which the State would suffer in tax revenues in the event of the invalidation by the federal courts of the statute if enacted with the exemption, I simply wish to alert the house of representatives to that provision of the proposed act which I think makes its

validity under the Federal Constitution suspect. Whether the risk should be taken is of course not for us to determine.

WILLIAM A. GRIMES

March 20, 1974.

House of Representatives, by its attorney, Richard F. Upton, Esq., filed a memorandum of law and a supplemental memorandum of law for affirmative answers.