Request of the Senate
No. 97-308

## OPINION OF THE JUSTICES
### (Property Taxation of Telephone Poles)

June 23, 1997

The following request of the senate for an opinion of the justices was adopted on April 24, 1997, and filed with the supreme court on April 29, 1997:

"Whereas, there is presently pending before the senate SB 73-FN, 'An act providing that telephone and cable communications poles and lines be subject to the property tax'; and

"Whereas, an amendment to SB 73-FN (document # 1997-1170s) has been proposed in the senate providing that 'poles and wires that are: (a) owned by a person operating as a public utility as defined in RSA 362:2; and (b) are employed in the transmission of telephone or cable television service shall be taxed as real estate in the town in which such property or any part of it is situated;' and

"Whereas, the amendment further provides for an exemption from property tax for '. . . (a) any whole or partial interest in poles; and (b) wires employed in the transmission of communications services that are subject to the tax imposed under RSA 82-A, and owned by a retailer as that term is defined in RSA 82-A:2, X;' and

"Whereas, it has come to the attention of the senate that numerous utility poles are jointly-owned by telephone utilities and electric utilities; however, telephone and cable wires and conduits are not jointly-owned with electric utilities; and

"Whereas, the interest in any poles, wires, and conduits owned by electric utilities is subject to property tax under RSA 72:8; and

"Whereas, a question has been raised that the adoption of the amendment, including the exemption referred to above, may be in violation of the 'proportional and reasonable' requirements of article 5, part II of the New Hampshire constitution or may create an impermissible classification of property in violation of article 6, part II of the New Hampshire constitution; now, therefore, be it

"Resolved by the Senate:

"That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following important questions of law:

"Would the enactment of the amendment to SB 73-FN (document # 1997-1170s):

1. Result in a violation of the 'proportional and reasonable' requirements of article 5, part II of the New Hampshire constitution?

2. Create an impermissible classification of property in violation of article 6, part II of the New Hampshire constitution?

"That the clerk of the senate transmit copies of this resolution and copies of the amendment to SB 73-FN (document # 1997-1170s) to the justices of the New Hampshire Supreme Court."

The following response is respectfully returned:

*To the Honorable Senate:*

The undersigned justices of the supreme court now submit the following replies to your questions of April 24, 1997. Following receipt of your resolution on April 29, 1997, we invited interested parties to file memoranda with the court on or before May 27, 1997.

SB 73-FN as amended (the bill) proposes to amend RSA chapter 72 (1991 & Supp. 1996) by inserting after section 8 the following new section:

72:8-a Telecommunications Poles and Wires.

I. Poles and wires that are:

(a) Owned by a person operating as a public utility as defined in RSA 362:2; and

(b) Are employed in the transmission of telephone or cable television service shall be taxed as real estate in the town in which such property or any part of it is situated.

II. Notwithstanding any other provision of this chapter, any whole or partial interest in poles and wires employed in the transmission of communications services that are subject to the tax imposed under RSA 82-A, and owned by a retailer as that term is defined in RSA 82-A:2, X, shall be exempt from taxation as real estate.

In addition, the bill proposes to amend RSA 72:9 (1991) to read:

72:9 Where Taxable. If the property described in RSA 72:8 or 72:8-a shall be situated in or extend into more than one town, the property shall be taxed in each town according to the value of that part lying within its limits.

The bill also proposes to amend RSA 72:10 (1991) to read:

72:10 Limitation. Nothing in RSA 72:8, 72:8-a, or 72:9 shall in any way change or affect the laws relating to the taxation of public utilities and other property owned by municipal corporations.

The bill would allow towns to tax poles and wires "employed in the transmission of telephone or cable television service" as real estate, so long as persons operating as a public utility, *see* RSA 362:2 (1995), owned such poles and wires. The bill would exempt from such taxation "any whole or partial interest in poles and wires employed in the transmission of communications services that are subject to the tax imposed under RSA 82-A, and owned by a retailer as that term is defined in RSA 82-A:2, X." RSA chapter 82-A generally taxes intrastate and interstate "communications services furnished to a person in this state and purchased at retail from a retailer by such person." RSA 82-A:3, :4 (1991). The term "[r]etailer" refers to "every person engaged in the business of making sales at retail as defined in this chapter," RSA 82-A:2, X (1991), and "[s]ale at retail" is defined as "the transmitting, supplying or furnishing of communications services and all services and equipment provided in connection therewith for a consideration" to private persons, RSA 82-A:2, XII (1991) (identifying public entities to which definition does not apply). RSA chapter 82-A requires retailers to collect the

communications services tax by adding it to their gross charge for communications services. *See* RSA 82-A:6 (1991). Under the bill's exemption, retailers responsible for the communications services tax would escape the real estate tax on telecommunications poles and wires.

Your first question asks whether enactment of the bill would "[r]esult in a violation of the 'proportional and reasonable' requirements of article 5, part II of the New Hampshire constitution." Your second question asks whether enactment of the bill would "[c]reate an impermissible classification of property in violation of article 6, part II of the New Hampshire constitution." In the interest of clarity, we address your questions in reverse order.

■ Under part II, article 6 of the State Constitution, the legislature has broad discretion to classify property for taxation purposes. *See Smith v. Dep't of Rev. Admin.*, 141 N.H. 681, 686, 692 A.2d 486, 491 (1997). "A reasonable classification which is sufficiently inclusive to constitute a distinctive class will be upheld." *Opinion of the Justices*, 114 N.H. 174, 177, 317 A.2d 568, 570 (1974). We limit our review of legislative taxation classifications to the question whether there exist "just reasons" for the classification. *Smith*, 141 N.H. at 687, 692 A.2d at 491; *see Opinion of the Justices (Current Use Reimbursement Program)*, 137 N.H. 270, 275, 627 A.2d 92, 95 (1993). "A just reason is the equivalent of a reasonable or rational basis." *Cagan's, Inc. v. Dep't of Rev. Admin.*, 126 N.H. 239, 246, 490 A.2d 1354, 1359 (1985).

Two of our prior decisions provide some illustration of these principles. In an advisory opinion, we concluded that refined petroleum products constitute a legitimate class of taxable property because "[t]he method of their manufacture is distinctive and the end products are markedly different from all other kinds of fuel and energy," thus making the incidence of a tax upon these products dependent "upon a characteristic event not common to other property." *Opinion of the Justices*, 114 N.H. at 178, 317 A.2d at 570. In *Cagan's, Inc.*, on the other hand, we invalidated a statutory scheme which failed to identify a distinct class of property. The statutory scheme classified, as a taxable entity, prepackaged food "served" from a vending machine, but not the same food "served" from a supermarket shelf. *See Cagan's Inc.*, 126 N.H. at 246, 490 A.2d at 1359. Finding "no difference in service sufficient to distinguish between the sales," we concluded that the taxation classification lacked a rational basis. *Id.* at 246, 490 A.2d at 1359-60.

■ ■ As these decisions demonstrate, the constitutionality of a taxation classification depends upon the physical and functional characteristics of the property itself. From the memoranda filed in regard to your questions, it appears there is significant dispute about the distinctiveness of telecommunications poles and wires. We cannot resolve such factual issues in rendering advisory opinions on legal questions. *Cf. Opinion of the Justices*, 123 N.H. 510, 511, 463 A.2d 891, 892 (1983); *Opinion of the Justices*, 116 N.H. 358, 360, 360 A.2d 889, 891 (1976). Further, neither the resolution requesting our advice nor the bill itself provides factual information from which we might question the bill's classification. We therefore confine our analysis to the *facial* validity of the bill's classification.

■ The legislature has the power to make any kind of property realty for purposes of taxation, *see King Ridge, Inc. v. Sutton*, 115 N.H. 294, 299, 340 A.2d 106, 110 (1975), and it may validly subject to taxation "certain instruments of production or machines which by their nature are designed for use in connection with real estate whether or not they are part of or attached to the realty," *Public Serv. Co. of N.H. v. Town of Seabrook*, 126 N.H. 740, 745, 496 A.2d 352, 356 (1985) (quotation omitted). Although we have no factual information before us, it appears reasonable to assume, *see Opinion of the Justices*, 115 N.H. 228, 231, 338 A.2d 553, 555 (1975), that telecommunications poles and wires are used in connection with the provision of telecommunications services and, therefore, share a connection to the provider's physical plant, *see Application of New York Telephone Co.*, 13 N.Y.S.2d 359, 362 (App. Div. 1939), *aff'd*, 26 N.E.2d 805 (N.Y. 1940), which itself is taxable as real estate, *see* RSA 72:7 (1991). The use of poles and wires as elements in a telecommunications network appears to make this property distinctive. Consequently, we cannot say the bill's classification of such poles and wires as taxable property is impermissible on its face, and we answer your second question in the negative.

Proceeding from our opinion that the classification of telecommunications poles and wires as taxable real property appears reasonable on its face, we address your first question. Part II, article 5 provides the legislature the authority "to impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and residents within, the . . . state." This provision "requires that all taxes be proportionate and reasonable, equal in valuation and uniform in rate, and just." *Smith*, 141 N.H. at 686, 692 A.2d at 490-91 (quotation and brackets omitted); *see Opinion of the Justices*, 117 N.H. 749, 755, 379 A.2d 782, 786 (1977). "Together,

part II, articles 5 and 6 permit the disproportionality inherent in taxes levied upon classes of property, so long as there is uniformity and proportionality within each class." *Smith*, 141 N.H. at 686, 692 A.2d at 491 (quotation and ellipsis omitted).

■ The proposed tax on telecommunications poles and wires appears facially valid under part II, article 5. In acting for the public welfare, the legislature may seek "to provide local government units with broad power to tax real property within their boundaries." *King Ridge, Inc.*, 115 N.H. at 299, 340 A.2d at 110. Allowing towns to tax telecommunications poles and wires would relate to the goal of increasing revenues through the assessment of the local instrumentalities and equipment essential to the provision of telecommunications services. *See Public Serv. Co. of N.H.*, 126 N.H. at 745, 496 A.2d at 356. The proposed tax, moreover, would apply uniformly to all similarly-situated owners of telecommunications poles and wires — that is, all owners of telecommunications poles and wires who are not also retailers of communications services under RSA chapter 82-A.

■ The question remains as to the constitutional validity of the exemption from the proposed tax for those owners of telecommunications poles and wires who qualify as retailers under RSA chapter 82-A. The legislature's power "to classify property into taxable and non-taxable groups includes power to grant reasonable exemptions from taxation." *Opinion of the Justices*, 87 N.H. 490, 491, 178 A. 125, 126 (1935); *see Smith*, 141 N.H. at 687, 692 A.2d at 491. An exemption is proper "so long as the legislature relies on a distinction between the taxable and nontaxable property that is a reasonable one, in the sense that it may be deemed to be just." *Smith*, 141 N.H. at 687, 692 A.2d at 492 (quotation omitted); *see Opinion of the Justices*, 112 N.H. 32, 34, 287 A.2d 756, 757 (1972). The wisdom of particular taxation measures is for the legislature and not the courts to determine. *See Opinion of the Justices*, 115 N.H. at 232, 338 A.2d at 556.

■ As discussed above, we have no factual information before us. Looking only to the provisions of the bill itself, we conclude the distinction drawn by the exemption to the proposed tax appears just. Owners of telecommunications poles and wires who are also communications services retailers are responsible for the statewide charge related to communications provision — the communications services tax established by RSA chapter 82-A. *See* RSA 82-A:6. While furthering its goal of increasing town revenues, the legislature in its discretion could determine that those owners of telecom-

munications poles and wires who are responsible for the communications services charge should be distinguished from those owners who are not; the legislature could reasonably view the two groups of owners as being differently situated. *See Opinion of the Justices*, 115 N.H. at 231, 338 A.2d at 555-56 (increased tax exemptions for resident owners of advanced age supported by reason of their diminished earning potential). This appears a just reason for any resulting discrimination against unexempted property. *See Opinion of the Justices*, 114 N.H. at 178, 317 A.2d at 570-71; *Opinion of the Justices*, 87 N.H. at 491, 178 A. at 126. On its face, then, the exemption appears valid, and we answer your first question in the negative.

We note that our responses to your questions are necessarily qualified, as "we cannot anticipate every possible fact pattern that may arise and test the limits of the bill." *Opinion of the Justices (Certain Evidence in Sexual Assault Cases)*, 140 N.H. 22, 27, 662 A.2d 294, 297 (1995). Indeed, a lack of information renders impracticable consideration of "all the provisions of the bill in every detail to ascertain whether they may be objectionable." *Opinion of the Justices*, 137 N.H. at 279, 627 A.2d at 97 (quotation omitted).

DAVID A. BROCK

WILLIAM R. JOHNSON

W. STEPHEN TAYLOR, III

SHERMAN D. HORTON, JR.

BRODERICK, J., did not participate.

June 23, 1997

*Dean, Rice & Howard, P.A.*, of Manchester (*Mark E. Howard* on the memorandum), filed a memorandum on behalf of the New Hampshire Electric Cooperative, Inc. in support of declining to answer the questions presented or, in the alternative, affirmative answers to the questions.

*Donahue, Tucker & Ciandella*, of Exeter (*Susan W. Chamberlin* on the memorandum), filed a memorandum on behalf of the Town of Seabrook in support of negative answers to the questions presented.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Jack B. Middleton* and *William S. Hewitt, Jr.* on the memorandum), filed

110

a memorandum on behalf of New England Telephone & Telegraph Company in support of negative answers to the questions presented.

*Ransmeier & Spellman, P.C.*, of Concord (*Dom S. D'Ambruoso* and *R. Stevenson Upton* on the memorandum), filed a memorandum on behalf of New Hampshire Telephone Association in support of negative answers to the questions presented.

*Rath, Young and Pignatelli, P.A.*, of Concord (*David L. Dubrow* and *Raquel S. Colby* on the memorandum), filed a memorandum on behalf of New England Cable Television Association, Inc., in support of negative answers to the questions presented.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Martin L. Gross* and *Margaret H. Nelson* on the memorandum), filed a memorandum on behalf of Public Service Company of New Hampshire in support of declining to answer the questions presented or, in the alternative, affirmative answers to the questions.

*Upton Sanders & Smith*, of Concord (*Robert Upton II* on the memorandum), filed a memorandum on behalf of the Towns of Bow and Deerfield and the New Hampshire Municipal Association in support of declining to answer the questions presented.