Rockingham, }
  Dec., 1895. }

### PETITION OF THE UNION FIVE CENTS SAVINGS BANK.

A savings bank is taxable for the amount of its deposits if the value of its assets is equal to that amount, although it receives no income from some of them.

A savings bank is not entitled to an abatement of the taxes assessed against it because its surplus is not so large relatively as that of other savings banks.

PETITION, for an abatement of taxes for the following reasons : (1) Because the petitioners have not received the past year, and there is no prospect that they will immediately receive, any income from a portion of their assets amounting to $48,586.57 ; (2) because they have not so much surplus relatively as other savings banks. The petition was dismissed, subject to exception.

*John E. Young*, for the petitioners.

*John Hatch*, for the bank commissioners.

CHASE, J. The first special provision for the taxation of money deposited in savings banks is found in the act of January 4, 1833 (Laws 1833, *c.* 108), which required the assessors of the several towns to assess the public taxes in part upon " money at interest, more than the owner pays interest for, including . . . all deposits in any savings bank or institution where the whole amount of deposits exceeds one hundred dollars." At that time only seven savings banks had been incorporated, the two oldest of which (the Portsmouth Savings Bank and the Strafford

County Savings Bank) had been in existence less than ten years. If deposits in them were previously taxed, it must have been as money on hand or at interest. Under the statute cited, depositors were not regarded as creditors of the bank, but as the beneficial owners of the fund in its possession,— the bank being their trustee. Each one's share of the common fund was taxable directly to him in the town in which he resided, if a resident of the state, in the same manner and at the same rate as was his other taxable property. Real estate in which the deposits were invested was taxable to the bank in the town where it was situated, under other provisions of the statute. This exception to the general rule was necessary in order to give the town containing the real estate the benefit of the tax upon it; and to avoid double taxation, depositors were entitled to a proportional reduction of their taxes. *Nashua Savings Bank* v. *Nashua*, 46 N. H. 389, 395, 396, 399; *Rockingham Ten Cent Savings Bank* v. *Portsmouth*, 52 N. H. 17, 27; *Cogswell* v. *Bank*, 59 N. H. 43; *Hall* v. *Paris*, 59 N. H. 71, 72; *Berry* v. *Windham*, 59 N. H. 288, 289; *Francestown Bank Case*, 63 N. H. 138; *Savings Bank* v. *Albee*, 63 N. H. 152, 162.

This method of taxing savings-bank deposits continued in force until 1864. All prior laws on the subject were then repealed, and in place of them it was provided that treasurers of savings banks should return to the secretary of state annually, on or before May 1, "a statement under oath, of the whole amount of deposits and accumulations due from such savings banks to each depositor on the first day of April next preceding; together with the name and residence of each depositor residing in the state"; and should pay to the state treasurer, on or before the first day of July, "three fourths of one per cent on the amount of such deposits and accumulations," to be in full of all taxes upon the property of the bank and upon the depositors' interests therein; and that the state treasurer should pay the several towns, on or before October 1, their proportion of such tax "according to the amount of the deposits and accumulations held in said savings banks by the residents of said towns." Laws 1864, *c.* 4028. The general plan of taxation thus introduced has continued to the present time. G. S., *c.* 58, *ss.* 12, 13, 14; G. L., *c.* 65, *ss.* 6, 7, 8, 9; P. S., *c.* 65, *ss.* 4, 5, 6. The rate was changed to one per cent in 1869 (Laws 1869, *c.* 4, *s.* 2), and to three fourths of one per cent upon general deposits and one per cent upon special deposits in 1895. Laws 1895, *c.* 108, *s.* 1. Prior to 1872, the tax was assessed upon the amount of the bank's deposits and accumulations without deducting the value of real estate in which any portion of them may have been invested; and such real estate was not taxable in the town where it was situated. *Rockingham Ten Cent Savings Bank* v. *Portsmouth*, 52 N. H. 17. In

that year the law was changed so as to require the assessment to be made upon the remainder of the deposits and accumulations after deducting the value of the bank's real estate, leaving that to be taxed in the same manner as the real estate of other parties.  Laws 1872, c. 17, s. 2; G. L., c. 65, s. 7; Laws 1881, c. 103, s. 5; P. S., c. 65, s. 5; Laws 1895, c. 108, s. 1.  From the record of assessments in the office of the state treasurer, it appears that the words "deposits and accumulations" in the statute of 1864 and subsequent statutes were understood to mean the "general and special deposits on which the corporation pays interest" (P. S., c. 65, ss. 4, 5), or the sums due depositors, including dividends already declared and payable.  Accumulations that had not been passed to the credit of depositors were not taxed.  The guaranty fund created by the act of 1874 (Laws 1874, c. 71, s. 5) is not taxable, because it forms no part of the sums standing to the credit of depositors.

Although the tax is assessed and collected by the state treasurer, none of it is retained by the state.  The portion laid upon the deposits of residents is distributed to the towns where they reside, and the balance is distributed among all the towns of the state as a part of the literary fund.  P. S., c. 65, s. 6; c. 88, ss. 9, 10.  The tax is, in fact, a municipal tax laid upon the property of the depositors and paid out of it by their incorporated trustee. *Bartlett* v. *Carter*, 59 N. H. 105.  It differs from the tax that was assessed upon deposits prior to 1864 in the manner of assessment and collection, and in the rate.  Under the earlier statutes, as has been seen, the deposits were taxed directly to the depositors in the same manner and at the same rate as their other property; while now, they are taxed to the depositors' trustee at a fixed rate which is lower than the rate upon other property in most towns.  Under the former statutes, the only inequality between the taxation of this and other kinds of property was caused by the exemption from taxation of small deposits (sums of $100 or $300 and less) and undivided profits; while under the existing statutes there is an inequality in the rate of taxation, besides an exemption from taxation of surplus and guaranty funds, amounting to a large sum, now nearly or quite three million dollars.

The present tax, differing in these respects from that upon other property, "is an anomaly, resting upon peculiar grounds of public policy, and is universally understood to have acquired the position of an exception to the constitutional rule of equality." *B., C. & M. R. R.* v. *State*, 62 N. H. 648, 649.

The petitioners do not object to the tax assessed against them on the ground that it is less than the tax upon other property, but on the ground that it is greater relatively than the tax of savings banks which have a larger percentage of untaxed prop-

erty in their guaranty and surplus funds. Inequality in taxation is a result of every exemption. The case under consideration is not the only example afforded by the law. "Much property always has been and still is untaxed." 64 N. H. 162, 195. Household furniture, mechanics' tools, and libraries never have been taxed. Houses of public worship, seminaries of learning, swamp lands reclaimed for purposes of agriculture, carriages worth not more than $50, and horses and neat stock not over three years old, are not taxable. P. S., c. 55, ss. 2, 5, 7; Laws 1895, c. 101, s. 1. A town may exempt for a term not exceeding ten years a manufacturing establishment proposed to be put in operation in the town. P. S., c. 55, s. 11. From 1833 to 1843, and from 1848 to 1861, deposits in savings banks of $100 and less were not taxable; and from 1861 to 1864, deposits of $300 and less. Laws 1833, c. 108, s. 2; R. S., c. 39, s. 3, p. 3; Laws 1848, c. 737; Laws 1861, c. 2493; Laws 1864, c. 2873, s. 1; *Nashua Savings Bank* v. *Nashua*, 46 N. H. 389, 394, 395, 396. Of the last named exemption, *Perley*, C. J., says in the case last cited (*p.* 396): "I can have no doubt that the intention was . . . to encourage and favor small deposits in savings banks by relieving them wholly from the burden of taxation, leaving them to stand in this respect on the same footing with other large classes of personal property, which are not liable to be taxed because they are omitted from the list of taxable articles." The general object of all these exemptions is to promote the prosperity and welfare of the state. The policy is justified on the ground that the advantages arising from the exemptions largely exceed the disadvantages due to the inequality in taxation introduced by them, so that, upon the whole, the public good is promoted. The law requires savings banks to strengthen their financial ability by creating a guaranty fund amounting to five per cent of their deposits (P. S., c. 165, ss. 16, 17), and holds out an inducement for compliance with the requirement by relieving the fund from taxation. The exemption of this fund and the other surplus from taxation does not in effect and general purpose differ from the other exemptions to which attention has been called. A bank whose guaranty fund is deficient has a less sum relieved from taxation relatively than a bank whose fund amounts to five per cent of its deposits; but it has no just ground for complaint on that account. Its heavier taxation as compared with that of other banks results from the fact that it does not possess so large an amount of exempted property. If A's personal property consists of a horse worth $50 and a carriage worth $100, and B's consists of a horse worth $50 and a carriage worth $50, the law does not relieve A's horse or a part of the value of his carriage from taxation because B's carriage is not taxable. Neither does it relieve part of the petitioners' deposits from taxation because

they have less exempted property than other banks. The inequality of which they complain will diminish as they set apart portions of their earnings to the guaranty fund in compliance with the law, and will soon disappear altogether. Its temporary existence is no cause for abatement.

Another ground on which the petitioners ask for an abatement is because some of their assets have not produced an income during the past year, and are not likely to do so in the immediate future. It is not claimed that the value of their entire assets is reduced below the amount of the sums deposited and the dividends that have been declared thereon. So far as appears, the depositors may at any time withdraw the sums standing to their credit upon giving the notice, if any, required by the by-laws. In other words, the value of their several interests in the assets of the bank is not less than the amount of their deposits. It is stated in the petitioners' brief that, according to the bank commissioners' report, the value of the bank's assets, June 30, 1894, was two and a half per cent more than the amount due depositors. It is not claimed that this report is erroneous, or that the value of the assets has since diminished in greater proportion than the deposits. The fact that securities do not produce an income has a tendency to reduce their value; but if after such reduction the value of the entire assets equals or exceeds the amount of the deposits, they are taxable at that sum. The shrinkage in value merely reduces the guaranty and surplus funds. It does not affect the taxable portion of the property. Its application to reduce the latter would give the bank an exemption that other banks might not get, and would tend to produce greater inequality of taxation among banks. It would not be equitable, and there is no reason to believe it was intended by the legislature. Whenever it appears that a bank's assets have been reduced in value below the amount due depositors, there may be occasion for abating its tax to a corresponding extent, and also for taking steps to wind up its affairs or reduce its deposit accounts so as to divide the loss equitably among all depositors. P. S., c. 162, ss. 12–20; c. 165, ss. 26, 27; *Simpson* v. *Bank*, 56 N. H. 466. The legislature has set the example for abating taxes in such cases. Laws 1875, cc. 51, 62; Laws 1877, c. 90; Laws 1878, c. 86; Laws 1881, c. 111; Laws 1885, c. 100.

*Exception overruled.*

PARSONS, J., did not sit: the others concurred.