Merrimack
No. 95-852

ERNEST T. SMITH, III *& a.*

v.

NEW HAMPSHIRE DEPARTMENT OF REVENUE ADMINISTRATION
*& a.*

April 3, 1997

*Sheehan Phinney Bass + Green, P.A.,* of Manchester (*James Q. Shirley & a.* on the petitioners' initial joint brief and *Mr. Shirley* and *Michael C. Harvell* on the petitioners' supplemental joint brief), for petitioners Howard Nichols, Margery Nichols, and Margaret Straw.

*McLane, Graf, Raulerson & Middleton, P.A.,* of Manchester (*Wilbur A. Glahn, III* on the petitioners' initial joint brief and *Mr. Glahn* and *Steven M. Burke* on the petitioners' supplemental joint brief, and *Mr. Glahn* orally), for petitioners John R. McLane, Jr. and Elisabeth D. McLane, trustees of the Virginia S. Deane Revocable Trust of 1985 — the Education Trust; Robert A. Wells, executor of the estate of Helen L. Kendall; Alexander A. Courtney; and Mary E. Courtney.

*Upton, Sanders & Smith, P.A.,* of Concord (*Russell F. Hilliard* and *David E. Barradale* on the petitioners' initial and supplemental

joint briefs, and *Mr. Hilliard* orally), for petitioners Ernest T. Smith, III, Sandra A. Smith, and Robert P. Burroughs.

*Wiggin & Nourie, P.A.*, of Manchester (*Mark Langan* on the petitioners' initial joint brief and *John R. Monson* on the petitioners' supplemental joint brief), for petitioners Swenson A Trust, Swenson Marital Trust, and Swenson Family Trust.

*Rath, Young and Pignatelli, P.A.*, of Concord (*William F.J. Ardinger & a.* on the petitioners' supplemental joint brief), for the petitioners.

*Jeffrey R. Howard*, attorney general, *V. Hummel Berghaus, IV*, revenue counsel, and *Beth L. Fowler*, assistant revenue counsel (*Martin P. Honigberg*, senior assistant attorney general, *Christopher P. Reid*, special counsel, *Mr. Berghaus*, and *Ms. Fowler* on the briefs, and *Mr. Reid* orally), for the defendants.

BROCK, C.J. This is an interlocutory appeal under Supreme Court Rule 9. The Superior Court (*Manias, J.*) transferred without ruling five questions:

> 1. Whether the New Hampshire Interest and Dividends Tax, levied pursuant to N.H.R.S.A. Ch. 77, discriminates amongst similarly situated taxpayers on the basis of the identity or situs of the payor of the taxpayer's investment income, in violation of the New Hampshire State Constitution, Part 1, Article 12.

> 2. Whether the New Hampshire Interest and Dividends Tax levied by N.H.R.S.A. Ch. 77 levies unreasonable or disproportional taxes upon similarly situated taxpayers on the basis of the identity or situs of the payor of the taxpayer's investment income, in violation of the New Hampshire State Constitution, Part 2, Article 5.

> 3. Whether the New Hampshire Interest and Dividends Tax, levied pursuant to N.H.R.S.A. Ch. 77, impermissibly classifies taxpayers on the basis of the identity or situs of the payor of the taxpayer's investment income rather than class of property, in violation of the New Hampshire State Constitution, Part 2, Article 6.

> 4. Whether the New Hampshire Interest and Dividends Tax, levied pursuant to N.H.R.S.A. Ch. 77, discriminates against interstate commerce in violation of the Commerce Clause of the United States Constitution because it taxes investment income earned from out-of-state payors while

providing an exemption for investment income earned from certain instate payors.

5. Whether the New Hampshire Interest and Dividends Tax, levied pursuant to N.H.R.S.A. Ch. 77 discriminates amongst similarly situated taxpayers on the basis of the identity or situs of the payor of the taxpayer's investment income, in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution because it taxes investment income earned from out-of-state payors while providing an exemption for investment income earned from certain instate payors.

The trial court specifically did not transfer the issues of the appropriate remedy if the challenged tax is found to be unconstitutional and the constitutionality under the State and Federal Constitutions of the tax exemption for interest on State and municipal bond obligations.

The petitioners are New Hampshire residents who have earned interest and dividend income from various sources and have paid New Hampshire taxes on that income as required by RSA chapter 77 (1991 & Supp. 1994), commonly referred to as the "Interest and Dividends Tax." They contend that two exemptions authorized under RSA chapter 77 during the 1991 through 1993 calendar years violated part I, article 12 and part II, articles 5 and 6 of the New Hampshire Constitution, and the commerce and equal protection clauses of the United States Constitution. The statute was amended effective January 1, 1995, to eliminate the exemptions at issue.

Pursuant to former RSA chapter 77, the State levied a tax on four classes of taxable property, two of which are at issue in this case. The first is "[i]nterest from bonds, notes, money at interest, and from all debts due the person to be taxed." RSA 77:4, I (1991). The second is "[d]ividends, other than stock dividends paid in new stock of the company issuing the same, on shares in all corporations and joint stock companies organized under the laws of any state, territory, or nation." RSA 77:4, II (1991).

Prior to 1995, the statute exempted from taxation certain income that would otherwise fit within the above definitions. The interest provision exempted interest from

deposits in any credit union, savings bank, building and loan association, or savings department of any loan and trust company or any national bank in this state or in those of any state which exempts from taxation the principal or income of deposits in such institutions in this State owned by residents of that state.

RSA 77:4, I. The dividend provision exempted dividends from "New Hampshire state banks, trust companies, building and loan associations, credit unions, or national banks." RSA 77:4, II.

Prior to oral argument before this court, the State withdrew its commerce clause defenses based upon the United States Supreme Court's recent decision in *Fulton Corp. v. Faulkner*, 116 S. Ct. 848 (1996). The State conceded that the exemptions formerly contained in RSA chapter 77 violated the commerce clause of the United States Constitution. The State's statement of the issues remaining in dispute provides:

> The State has conceded that the former exemptions for (i) interest paid by New Hampshire depository institutions and (ii) dividends paid by a handful of New Hampshire stock banks violated the Commerce Clause, because they did not apply to income from similar out-of-state payors. Those who have been aggrieved by the Commerce Clause violation are entitled to seek "meaningful backward looking relief."

See *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 31 (1990).

The parties, however, maintain different positions on the scope of the State's commerce clause concession and its impact on the remedy phase of this litigation. The petitioners contend that by conceding that former RSA chapter 77 violated the commerce clause by discriminating between interest and dividends earned from in-state banks and interest and dividends earned from out-of-state banks, the State must also concede that the commerce clause was violated by favoring New Hampshire bank interest and dividends over other types of investment income such as out-of-state corporate stock dividends and bond interest. The petitioners argue that the State's admission that the former exemptions affected interstate commerce applies to all out-of-state investments under the commerce clause.

The State concedes that to the extent it treated in-state and out-of-state bank interest and dividends differently, it violated the commerce clause. The State argues, however, that the commerce clause is not violated as to interest and dividends earned on out-of-state corporate sources because that income is taxed equally regardless of where the corporation is located. The State's position is that the scope of the commerce clause violation is the distinction between in-state and out-of-state activity within a specific class of property; namely, income received from depository banks.

*I. State Constitution*

■ The petitioners contend that former RSA chapter 77 violates the State Constitution "because it imposes a non-uniform, unequal, disproportionate, unreasonable and unfair tax burden." They further contend that "there can be no 'just reason' for a legislative tax classification that violates the commerce clause," and thus the State's commerce clause concession obviates the need for review under the New Hampshire Constitution. We disagree.

Disposition of the federal constitutional questions presented on this transfer is not dispositive of the State constitutional questions. *See Opinion of the Justices*, 114 N.H. 174, 179, 317 A.2d 568, 571 (1974) (concluding that classification of property for taxation was proper under State Constitution while refusing to opine on permissibility under Federal Constitution). Similarly, the State's withdrawal of its federal commerce clause defenses has no effect on our State analysis. The United States Constitution includes provisions governing the regulation and protection of interstate commerce, U.S. CONST. art. I, § 8, cl. 3, and ensuring that all persons are afforded equal protection under the laws, U.S. CONST. amend. XIV. The questions raised by the State constitutional challenge, however, concern the State's decision to classify, as taxable property, income based upon the classification of its payor, or the situs of the account, N.H. CONST. pt. II, art. 6. *See Opinion of the Justices*, 114 N.H. at 177-78, 317 A.2d at 570 (reviewing broad legislative prerogative to classify property). Although the legislative decision to treat New Hampshire and out-of-state sources of income differently concededly violates the commerce clause, we might conclude that it was valid under the State Constitution, which we examine independently. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). In fact, our constitution supports favoring New Hampshire interests over others, as the legislature is empowered to enact laws as its members "may judge for the benefit and welfare of this state." N.H. CONST. pt. II, art. 5; *see Opinion of the Justices*, 114 N.H. at 178, 317 A.2d at 571 (tax exemption promoting State's general welfare is just); *cf. The Housing Partnership v. Town of Rollinsford*, 141 N.H. 239, 241-42, 683 A.2d 189, 190-91 (1996) (discussing charitable exemption to property tax).

Three provisions of the New Hampshire Constitution work in conjunction to ensure the fairness of any scheme of taxation enacted by our legislature. First, part I, article 12 establishes that "[e]very member of the community has a right to be protected by it, in the enjoyment of his life, liberty, and property; he is therefore bound to contribute his share in the expense of such protection." This article

requires that a given class of taxable property be taxed at a uniform rate, *Opinion of the Justices*, 123 N.H. 296, 301, 460 A.2d 93, 97 (1983), and that "[t]axes must be not merely proportional, but in due proportion, so that each individual's just share, and no more, shall fall upon him," *Rollins v. Dover*, 93 N.H. 448, 449, 44 A.2d 113, 114 (1945) (quotation omitted). This provision literally imposes a requirement of proportionality of a taxpayer's portion of the public expense, "according to the amount of his taxable estate," *Opinion*, 4 N.H. 565, 568 (1829), and requires that similarly situated taxpayers be treated the same, *see Eyers Woolen Co. v. Gilsum*, 84 N.H. 1, 16-17, 146 A. 511, 519 (1929).

Second, part II, article 5 provides the General Court the authority "to impose and levy proportional and reasonable assessments, rates and taxes, upon all the inhabitants of, and residents within, the . . . state." This section requires "that all taxes be proportionate and reasonable[,] equal in valuation and uniform in rate, and just." *Opinion of the Justices*, 131 N.H. 640, 642, 557 A.2d 273, 275 (1989) (quotation omitted); *see Opinion*, 4 N.H. at 569. Together, part I, article 12 and part II, article 5 "establish equality and justice as the basis of all constitutional taxation." *State v. Express Co.*, 60 N.H. 219, 236 (1880) (Stanley, J.).

Third, part II, article 6 authorizes the legislature to "classify" property for purposes of taxation. *See Opinion of the Justices*, 123 N.H. 344, 348, 461 A.2d 129, 131 (1983); *Opinion of the Justices*, 123 N.H. at 305, 460 A.2d at 100. This provision grants the legislature broad power to declare property to be taxable or non-taxable based upon a classification of the property's kind or use, but not based upon a classification of the property's owner. *Opinion of the Justices*, 115 N.H. 306, 308, 339 A.2d 450, 451-52 (1975); *Opinion of the Justices*, 84 N.H. 559, 569, 149 A. 321, 326 (1930). Together, part II, articles 5 and 6 "permit the disproportionality inherent in taxes levied upon . . . classes of property," so long as there is uniformity and proportionality within each class. *Opinion of the Justices*, 111 N.H. 206, 209, 278 A.2d 348, 350 (1971) (quotation omitted). Strictly speaking, "the rule of equality and proportionality does not apply to the selection of the subjects of taxation, provided just reasons exist for the selection made." *Opinion of the Justices*, 94 N.H. 506, 508, 52 A.2d 294, 295 (1947).

Together, these three constitutional provisions require that taxation be just, uniform, equal, and proportional; in addition, our constitution demands that classifications be made between types of property, not taxpayers. *See Opinion of the Justices*, 131 N.H. at 642, 557 A.2d at 275; *Opinion of the Justices*, 123 N.H. at 348, 461 A.2d at 131; *Opinion*, 4 N.H. at 568. We have

consistently interpreted the constitutional provisions relating to the taxing power to require that a tax imposed by the legislature against a distinct class of property be at a uniform rate. A tax must be in proportion to the actual value of the property subject to tax, and it must operate in a reasonable manner.

*Johnson & Porter Realty Co. v. Comm'r of Rev. Admin.*, 122 N.H. 696, 698, 448 A.2d 435, 436 (1982) (citations omitted).

"It is well established that our legislature has liberal powers with respect to the classification of taxable property. A reasonable classification which is sufficiently inclusive to constitute a distinctive class will be upheld." *Opinion of the Justices*, 114 N.H. at 177, 317 A.2d at 570 (citation omitted). We accordingly limit our review of legislative taxation classifications to a determination whether there are "just reasons" for the classification. *Opinion of the Justices*, 115 N.H. at 308, 339 A.2d at 451. In this context, "[a] just reason is the equivalent of a reasonable or rational basis." *Cagan's, Inc. v. Dep't of Rev. Admin.*, 126 N.H. 239, 246, 490 A.2d 1354, 1359 (1985).

The legislative power to classify property includes the power to exempt property from taxation. *Opinion of the Justices*, 82 N.H. 561, 571, 138 A. 284, 289 (1927). Although "[i]nequality in taxation is the result of every exemption," *Petition of Savings Bank*, 68 N.H. 384, 387, 36 A. 17, 19 (1895), "[e]xemptions are justified as an exercise of . . . the other powers which provide for the common benefit, protection, and security, and which may be conveniently grouped under the name of the protective power," *Opinion of the Justices*, 82 N.H. at 571, 138 A. at 289 (quotation omitted). *See Opinion of the Justices*, 94 N.H. at 508-09, 52 A.2d at 295. It has long been our opinion that

> [t]o establish the rules by which each individual's just and equal proportion of a tax shall be determined is a task of much difficulty, and a very considerable latitude of discretion must be left to the legislature on the subject. Within the limits of this discretion, as to the selection of proper subjects of taxation and the proportion of the tax that shall be laid on each subject, the authority of the legislature is, without question, supreme.

*Canaan v. District*, 74 N.H. 517, 539, 70 A. 250, 258 (1908) (quotation and ellipsis omitted). An exemption is proper under the legislature's taxing power so long as the legislature relies on a distinction between the taxable and nontaxable property that "is a reasonable one, in the sense that it may be deemed to be just." *Opinion of the Justices*, 82 N.H. at 573, 138 A. at 290.

The exemptions from taxation at issue in this case were enacted for just reasons. *See Opinion of the Justices*, 115 N.H. at 308, 339 A.2d at 451. The situs exemption treats interest and dividend income differently depending on the situs of its payor, classifying the sources of New Hampshire taxpayers' investment income based upon its origin; the provision does not impermissibly discriminate among New Hampshire taxpayers, *see Opinion of the Justices*, 106 N.H. 202, 205, 208 A.2d 458, 461 (1965) (property, not taxpayers, may be classified for taxation). By classifying investment income in this way, the General Court encourages investment in domestic banks and financial institutions. The members of our legislature are empowered to enact "all manner of wholesome and reasonable . . . laws . . . as they may judge for the benefit and welfare of this state." N.H. CONST. pt. II, art. 5. Encouraging the financial health of domestic companies is a just reason for legislative action in the form of tax exemption. *See Opinion of the Justices*, 114 N.H. at 178, 317 A.2d at 571.

> The resulting inequality or discrimination against unexempted property is not fatal to the constitutionality of the exemption. Inequality of taxes laid is forbidden, but inequality caused by taxing some property and not taxing other is permitted.
>
> The purpose of the proposed exemption, being one properly within the legislature's discretion in acting for the welfare of the state, furnishes a just reason therefor.

*Opinion of the Justices*, 87 N.H. 490, 491, 178 A. 125, 126 (1935) (quotation and citation omitted).

This is precisely the discrimination that violates the commerce clause, as the State has conceded. The limiting power of the United States Constitution over state action in such circumstances, *see Opinion of the Justices*, 87 N.H. 496, 498-99, 179 A. 409, 410 (1935), renders futile the protectionist effort, but it does not render the effort invalid under the State Constitution. *Cf. Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359 (1973) (recognizing that "the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation").

Having concluded that the legislative decision to tax income differently based upon the *situs* of the payor was enacted for just reasons, we turn to the question whether the decision to tax *banks* differently satisfies the same inquiry. Banks are sufficiently unique — with distinct characteristics and a distinct role in society — so as to make the exemption "sufficiently inclusive to constitute a distinc-

tive class." *Opinion of the Justices*, 114 N.H. at 177, 317 A.2d at 570; *see Opinion of the Justices*, 87 N.H. at 491, 178 A. at 126.

Banks are different. The General Court has treated banks differently from other institutions when taxing their assets directly. *See Petition of Savings Bank*, 68 N.H. at 386, 36 A. at 18-19; *cf. Manchester Sav. & Loan Ass'n v. State Tax Commission*, 105 N.H. 17, 20-21, 191 A.2d 529, 532 (1963) (discussing differences between State credit unions and federal savings and loan associations and approving of different tax treatment); *Opinion of the Justices*, 102 N.H. 189, 190, 153 A.2d 407, 408 (1959) (referring to banks as "peculiarly subject to regulation").

Banks play an important role in our economy. By general definition, a bank is "an establishment for the custody, loan, exchange, or issue of money, for the extension of credit, and for facilitating the transmission of funds by drafts or bills of exchange." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 172 (unabridged ed. 1961); *see* BLACK'S LAW DICTIONARY 144 (6th ed. 1990). When commenting on the importance of prudent management of New Hampshire banks, this court observed that

> [i]t is of vast importance to the commercial prosperity, the manufacturing activity, and the industrial welfare of the community that banks be managed with integrity and sagacity and according to the rules of law prescribed for their administration. The savings of the poor, the earnings of the thrifty, and the resources of the wealthy, alike depend upon the prevention of delinquency on the part of those who control and direct the affairs of banks.

*Opinion of the Justices*, 102 N.H. at 190, 153 A.2d at 408 (quotation omitted). The United States Congress has found that federally regulated banks must "serve the convenience and needs of the communities in which they are chartered to do business," and that they "have [a] continuing and affirmative obligation to help meet the credit needs of the local communities in which they are chartered." 12 U.S.C. § 2901(a)(1), (3) (1994) (findings and purpose statement of Community Reinvestment Act of 1977). Other courts have recognized the distinct characteristic powers, privileges, and responsibilities of banks when concluding that they may be classified apart from other institutions for taxation purposes. *See, e.g., Brophy v. Powell*, 121 P.2d 647, 656 (Ariz. 1942) (nature of banks makes placing them "in a class entirely distinct from other institutions" reasonable); *Commonwealth v. Madden's Ex'r*, 97 S.W.2d 561, 563-64 (Ky. Ct. App. 1936) (recognizing broad authority to classify institutions separately for tax purposes); *Memphis Bank and Trust Co. v.*

*Garner*, 624 S.W.2d 551, 554 (Tenn. 1981) (banks may be classified separately under state constitution), *rev'd on other grounds*, 459 U.S. 392 (1983); *Bank of Texas v. Childs*, 615 S.W.2d 810, 815-16 (Tex. Ct. App. 1981) (banks sufficiently different from other businesses to validate differing tax treatment), *rev'd on other grounds sub nom. American Bank & Trust Co. v. Dallas County*, 463 U.S. 855 (1983); *State v. Clement Nat. Bank*, 78 A. 944, 954 (Vt. 1911) (taxation of bank deposits does not violate proportionality requirement in state constitution), *aff'd*, 231 U.S. 120 (1913); *In re National Bank of West Virginia at Wheeling*, 73 S.E.2d 655, 665 (W. Va. 1952) (uniformity requirement does not extend to "different classes of businesses").

Just as banks differ from other business institutions, bank deposits differ from other investments. Stock in a local "stock bank" is a different sort of stock. The exemptions for interest on deposits in banks, RSA 77:4, I, and for dividends paid by New Hampshire "stock banks," RSA 77:4, II, recognize the inherent differences between banks and other business organizations, including other financial organizations. We conclude that banks thus are "a distinctive class," *Opinion of the Justices*, 114 N.H. at 177, 317 A.2d at 570, and that recognition of the inherent differences constitutes just reasons, *see Opinion of the Justices*, 94 N.H. at 508, 52 A.2d at 295, for differing tax treatment. *See Opinion of the Justices*, 114 N.H. at 178, 317 A.2d at 570-71. Accordingly, we hold that the legislative classification of banks separate from other businesses for tax purposes is valid under the New Hampshire Constitution.

In reaching this conclusion, we reject the petitioners' argument that the exemptions impermissibly classify *taxpayers*, as opposed to classifying *property. See Opinion of the Justices*, 84 N.H. at 569, 149 A. at 326. The scheme of taxation contained in RSA chapter 77 classifies banks as comprising a different type of *payor* of investment income, either in the form of interest or dividends. Further, we reject the petitioners' contention that, essentially, all "intangible" investments must be classified together by the legislature. We have stated before that different types of investment income may be treated differently for tax purposes, specifically noting the differing characteristics of capital gains, interest, and dividends, and specifically authorizing their different tax treatment. *Opinion of the Justices*, 117 N.H. 512, 516, 374 A.2d 964, 966 (1977); *see Opinion of the Justices*, 82 N.H. at 573, 138 A. at 290.

Because we conclude that the legislature's decision to exempt bank interest and stock bank dividends from taxation under RSA chapter 77 was a valid classification under the New Hampshire

Constitution, we need not engage in a discussion of the remaining two transferred questions raising State constitutional issues. We discern no allegation that the tax scheme treated taxpayers differently in any way except for the classification based upon payors of income. Accordingly, our determination that the classification of bank interest and stock bank dividends was a valid one under the State Constitution, supported by just reasons, concludes our analysis.

## II. Federal Commerce Clause

■ The parties reserved the issue of remedy for the conceded commerce clause violation for the trial court. The State indicated in its pleadings before this court that fashioning a remedy "will require presentation of factual evidence and will include a resolution of such issues as (a) who will be entitled to relief, (b) what form that relief will take, and (c) severability of the statute." Given the complexity of this area of the law, we undertake a discussion of some of the cases to clarify the issues to be addressed on remand.

The commerce clause of the United States Constitution provides that "[t]he Congress shall have power . . . [t]o regulate Commerce . . . among the several states." U.S. CONST. art. I, § 8, cl. 3. "Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.*, 511 U.S. 93, 98 (1994); *see Associated Industries of Mo. v. Lohman*, 511 U.S. 641, 647 (1994) (commerce clause prohibits regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors).

This construction supports the commerce clause's purpose "of preventing a State from retreating into economic isolation or jeopardizing the welfare of the Nation as a whole, as it would do if it were free to place burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear." *Oklahoma Tax Com'n v. Jefferson Lines, Inc.*, 115 S. Ct. 1331, 1335 (1995). In this way, the provision

> reflects a central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation.

*Id.* at 1335-36 (quotation and brackets omitted). "The Commerce Clause does not, however, eclipse the reserved power of the States to tax for the support of their own governments, . . . rather, the Clause is a limit on state power." *Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 328-29 (1977) (quotation and citation omitted).

The Supreme Court has recognized that its decisions in this area present a "quagmire" of case law. *See American Trucking Assns., Inc. v. Scheiner*, 483 U.S. 266, 280 (1987). Several fundamental concepts remain constant, however, including the principle that "[n]o State, consistent with the Commerce Clause, may impose a tax which discriminates against interstate commerce by providing a direct commercial advantage to local business." *Boston Stock Exchange*, 429 U.S. at 329 (quotation and ellipses omitted). State taxation of interstate commerce is not *per se* invalid. *See Maryland v. Louisiana*, 451 U.S. 725, 754 (1981) (interstate commerce may be required to bear its share of the costs and services provided by the States); *Ky. Whip & Collar Co. v. I.C.R. Co.*, 299 U.S. 334, 349 (1937) (States in the exercise of their police power may lawfully restrict interstate commerce in relation to their internal commerce). The commerce clause does, however, prohibit state taxes that discriminate against interstate commerce to the advantage of local business. "A state tax must be assessed in light of its actual effect considered in conjunction with other provisions of the State's tax scheme[,] . . . to determine whether the statute under attack . . . will in its practical operation work discrimination against interstate commerce." *Maryland v. Louisiana*, 451 U.S. at 756 (quotation omitted).

"[A] State may not discriminate between transactions on the basis of some interstate element." *Armco Inc. v. Hardesty*, 467 U.S. 638, 642 (1984) (quotation omitted). In other words, "a State may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." *Id.; see American Trucking Assns., Inc.*, 483 U.S. at 286 ("state tax that favors in-state business over out-of-state business for no other reason than the location of its business is prohibited by the Commerce Clause"). "Thus, States are barred from discriminating against foreign enterprises competing with local businesses, and from discriminating against commercial activity occurring outside the taxing State." *Oklahoma Tax Com'n,* 115 S. Ct. at 1344 (citations omitted).

The Court applies "a virtually *per se* rule of invalidity to provisions that patently discriminate against interstate trade." *Associated Industries of Mo.*, 511 U.S. at 647 (quotation omitted).

The Court has also recognized, however, that "a facially discriminatory tax may still survive Commerce Clause scrutiny if it is a truly 'compensatory tax' designed simply to make interstate commerce bear a burden already borne by intrastate commerce." *Fulton Corp.*, 116 S. Ct. at 854 (quotation omitted). "[S]tate statutes that clearly discriminate against interstate commerce are routinely struck down, unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 274 (1988) (citations omitted).

Under the contemporary approach to the commerce clause, the Supreme Court applies what has become known as *Complete Auto*'s four-part test: (1) whether there is a substantial nexus between the activity taxed and the taxing State; (2) whether the tax is fairly apportioned based on the activity conducted in the taxing State; (3) whether the tax discriminates against interstate commerce; and (4) whether the tax is related to the services provided by the State. *See Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 287 (1977). Only the third factor, discrimination against interstate commerce, is relevant for the purposes of this case.

"'Discrimination' is not a self-defining term. It can be a delusively simple term, and once the question goes beyond the tax that is patently discriminatory on its face, much room for controversy about hidden discrimination exists." Tatarowicz & Mims-Velarde, *An Analytical Approach to State Tax Discrimination Under the Commerce Clause*, 39 VAND. L. REV. 879, 885 (1986) (quotation omitted). A party who is challenging the constitutionality of a statute bears the burden of proof. *See Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923); 16 AM. JUR. 2D *Constitutional Law* § 251 (1979). In order to prove that a state tax statute violates the commerce clause, the taxpayer need not show the extent of disparate tax treatment or demonstrate a minimal level of discriminatory effect; the taxpayer need only prove discrimination against commerce. *See Maryland v. Louisiana*, 451 U.S. at 759-60. In this manner, the issues of constitutionality of the statute and remedy for its violation are separate. *See Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 269, 277 (1984).

The Supreme Court has defined discrimination to mean "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc.*, 511 U.S. at 99. A court will find discrimination if either the purpose of the legislation is to discriminate or if the effect of the legislation discriminates in favor of local interests. *See Bacchus*

*Imports, Ltd.,* 468 U.S. at 270. If the tax is discriminatory on its face, the court will look with the strictest scrutiny to determine whether the state law "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Oregon Waste Systems, Inc.,* 511 U.S. at 101 (quotation omitted). The most common justification for legitimate discrimination is the compensatory tax which, in light of *Fulton Corp. v. Faulkner,* the State has conceded is not a valid defense in this case.

A taxing statute that nominally treats all trade alike might discriminate in practical operation against interstate commerce by providing local business with a competitive advantage. The Supreme Court has articulated some standards for determining whether a tax is discriminatory. In *Boston Stock Exchange,* 429 U.S. at 319, the Court was asked to decide the constitutionality of an amendment to New York State's tax on securities transactions. The statute imposed a transfer tax on securities transactions so that transactions involving out-of-state sales were taxed more heavily than most transactions involving a sale within the State. *See id.* at 324-25.

The Supreme Court used broad language in concluding that the tax was discriminatory. The Court stated that a tax is discriminatory if it provides "a direct commercial advantage to local business," *id.* at 329 (quotation omitted), or if choices are "not made solely on the basis of nontax criteria," *id.* at 331, or if the tax "forecloses tax-neutral decisions and creates both an advantage for the exchanges in New York and a discriminatory burden on commerce to its sister States," *id.* The tax is nondiscriminatory, on the other hand, insofar as the flow of commerce "was channeled neither into nor out of New York by the state tax." *Id.* at 330 (footnote omitted). In response to the argument that the effect the statute might have on sales by residents and nonresidents did not amount to unconstitutional discrimination, the Court concluded that the large tax penalty for trading on out-of-state markets could not be deemed to have no practical effect on interstate commerce:

> Whatever the current inclinations of New York investors, the Clause protects out-of-state businesses from any discriminatory burden on their interstate commercial activities. Even if the tax is not now the sole cause of New York residents' refusal to trade on out-of-state exchanges, at the very least it reinforces their choice of an in-state exchange and is an inhibiting force to selling out of State; that inhibition is an unconstitutional barrier to the free flow of commerce.

*Id.* at 334 n.13.

In *Bacchus Imports, Ltd.*, 468 U.S. at 265, the Court reviewed a challenge to the constitutionality of the Hawaii liquor tax, which was a 20% excise tax imposed on sales of all liquor at wholesale regardless of whether the liquor was produced in-state or out-of-state. Specifically at issue were exemptions from the tax for certain locally produced alcoholic beverages: okolehao, a brandy distilled from the root of an indigenous shrub of Hawaii, and pineapple wine manufactured in the State. *Id.* The Court struck down the tax as violating the commerce clause, concluding that the exemption had both the purpose and the effect of discriminating in favor of locally produced products. *Id.* at 273.

Despite the fact that the tax exemption seemed to discriminate on its face against interstate commerce by bestowing a commercial advantage on okolehao and pineapple wine, Hawaii argued that there was no improper discrimination because okolehao and pineapple wine did not compete with the other products sold by the wholesalers. *Id.* at 268. The Supreme Court rejected this argument because the purpose of the exemption was to benefit the local products. *See id.* at 269. The only way that local liquors could be benefited was if consumers switched from drinking other alcoholic beverages to the locally produced liquors, and the Court accordingly assumed that there was some competition between the local liquors and the nonexempted liquors. *Id.* The Court stated that

> neither the small volume of sales of exempted liquor nor the fact that the exempted liquors do not constitute a present "competitive threat" to other liquors is dispositive of the question whether competition exists between the locally produced beverages and foreign beverages; instead, they go only to the extent of such competition.

*Id.* (footnote omitted). On the stipulated facts of the case, the Court was "unwilling to conclude that no competition exist[ed] between the exempted and the nonexempted liquors." *Id.* The Court concluded that "as long as there is some competition between the locally produced exempt products and nonexempt products from outside the State, there is a discriminatory effect." *Id.* at 271. The Court also rejected Hawaii's argument that the purpose was not discriminatory because the legislature did not intend to hurt out-of-state businesses, but only to help the local wines. *Id.* at 273.

As the State has conceded in the case before us, the challenged exemptions facially discriminate against interstate commerce because interest and dividend income earned on investments in out-of-state banks is taxed while interest and dividend income earned on investments in New Hampshire banks remains untaxed.

New Hampshire residents have a strong economic incentive to invest in banks located within the State. Under Supreme Court cases set out in this opinion, the tax discriminates against interstate commerce to the direct competitive advantage of New Hampshire banks. The tax's distinction between in-state and out-of-state banks is unconstitutional because a New Hampshire depositor's decision about whether to invest in a domestic or foreign bank is not governed by tax-neutral criteria. This violates the principle that state statutes may not constitutionally encourage the development of local industry by means of taxing measures that impose greater burdens on economic activities taking place outside the State than would be placed on similar activities within the State. *See Boston Stock Exchange, Inc.*, 429 U.S. at 329.

In fashioning a remedy, however, the trial court must determine whether the petitioners can prove their claim that the effect of the exemptions for New Hampshire bank interest and dividends was to discriminate unlawfully against other sources of interest and dividend income, as opposed to discriminating solely against income earned on investments in out-of-state banks, as the State maintains. The negative commerce clause is intended to preserve free market competition. If there has been no actual effect on the market because New Hampshire bank interest and dividends do not compete with other corporate investments, then the Federal Constitution has not been violated as to entities other than out-of-state banks. *Cf. General Motors Corp. v. Tracy*, 65 U.S.L.W. 4086, 4092 (U.S. Feb. 18, 1997). In order to determine the extent of the discrimination in this case, the trial court must make a factual determination whether New Hampshire bank interest and dividends compete with other sources of investment income such as stock dividends and bond interest. *See Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 126 (1978) (law had no demonstrable effect whatsoever on the interstate flow of goods). The petitioners must offer evidence to support "a precise determination of the extent of the discrimination." *Maryland v. Louisiana*, 451 U.S. at 759-60; *see Government Suppliers Consolidating Serv. v. Bayh*, 975 F.2d 1267, 1279 (7th Cir. 1992) (although law did not facially discriminate against interstate commerce, factual findings as to actual effect on interstate commerce led to conclusion that statute violated commerce clause); *see generally* Schoettle, *Commerce Clause Challenges to State Taxes*, 75 MINN. L. REV. 907 (1991) (emphasizing the importance of examining the effect of a tax on interstate commerce).

"If a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which

he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." *McKesson Corp.*, 496 U.S. at 31 (footnotes omitted). The State retains flexibility in remedying an impermissibly discriminatory tax.

> [A] State might refund the additional taxes imposed upon the victims of its discrimination or, to the extent consistent with other constitutional provisions (notably due process), retroactively impose equal burdens on the tax's former beneficiaries. A State may also combine these two approaches. These options are available because the Constitution requires only that the resultant tax actually assessed during the contested period reflect a scheme that does not discriminate against interstate commerce.

*Fulton Corp.*, 116 S. Ct. at 861 (citation, quotation, and brackets omitted). "The State is free to choose which form of relief it will provide." *McKesson Corp.*, 496 U.S. at 51.

*III. Equal Protection*

Because the State concedes that the commerce clause applies and was violated in the instant case, we need not engage in a separate analysis under the equal protection clause. *See Bacchus Imports, Ltd.*, 468 U.S. at 273 n.11; *Blue Jay Realty Trust v. City of Franklin*, 132 N.H. 502, 509, 567 A.2d 188, 193 (1989); *cf. General Motors Corp.*, 65 U.S.L.W. at 4096 ("[I]n some peculiar circumstances state tax classifications facially discriminating against interstate commerce may violate the Equal Protection Clause even when they pass muster under the Commerce Clause.").

*Remanded.*

All concurred.