Hillsborough-northern judicial district
No. 2009-850

FIRST BERKSHIRE BUSINESS TRUST & a.

v.

COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF REVENUE ADMINISTRATION & a.

Argued: October 14, 2010
Opinion Issued: November 24, 2010

*Rath, Young & Pignatelli, P.C.*, of Concord (*Kenneth C. Bartholomew* and *Christopher J. Sullivan* on the brief, and *Mr. Bartholomew* orally), for the petitioners.

*Michael A. Delaney*, attorney general (*Glenn A. Perlow*, assistant attorney general, on the brief and orally), for the New Hampshire Department of Revenue Administration.

DALIANIS, J. The petitioners, First Berkshire Business Trust (First Trust), First Berkshire Properties, LLC (First LLC) and Second Berkshire Properties, LLC (Second LLC), appeal an order of the Superior Court (*O'Neill*, J.) that partially affirmed and partially reversed a decision of the New Hampshire Department of Revenue Administration (DRA). We affirm.

The record reveals the following facts. The petitioners are three separate business organizations. First LLC and Second LLC are both wholly-owned subsidiaries of First Trust. This appeal arises out of two transactions involving real property located at 200 John E. Devine Road in Manchester. At issue is DRA's imposition of real estate transfer taxes, interest and penalties in connection with these transactions. *See* RSA 78-B:1, :7-a (2003); RSA 21-J:28 (2000), :33 (Supp. 2009).

The first transaction occurred in April 2003, when First Trust obtained refinancing for the property and others through Wells Fargo Bank as a means of avoiding bankruptcy. As a condition of refinancing, Wells Fargo required First Trust to create a single purpose entity, subsequently known as First LLC. Wells Fargo required that: (1) title to the subject property be in First LLC's name; (2) a deed be executed listing First LLC as the property's legal owner; and (3) First LLC be listed as the borrower of the funds from Wells Fargo. First LLC entered into a mortgage with Wells Fargo on the property. On April 11, 2003, a deed from First Trust to First

LLC was recorded, stating that the property was deeded from First Trust to First LLC for ten dollars and "other good and valuable consideration" to be paid by First LLC.

The second transaction occurred in the summer of 2003, when the property was refinanced again through another bank. First Trust sought refinancing to obtain better repayment terms. First Trust formed Second LLC because it anticipated that it would need another single purpose entity for the second refinancing. The other bank approved this. On June 23, 2003, a deed from First LLC to Second LLC was executed; it was recorded on July 9, 2003. The deed states that the property was deeded from First LLC to Second LLC "in consideration of the sum of Ten Dollars . . . and other good and valuable consideration" to be paid by Second LLC.

In October 2004, DRA issued notices of assessment, including additional taxes, penalties and interest against First Trust in the amount of $102,271.84 and against First LLC and Second LLC in the amount of $100,556.16. Thereafter, the petitioners petitioned DRA to re-determine the taxes, penalties and interest owed. Following hearings, DRA issued a final order upholding its original assessment.

The petitioners appealed to the superior court, where DRA stipulated that the total amount of taxes, penalties and interest owed through March 31, 2009, was $316,920.00. The parties filed cross-motions for summary judgment. In ruling on these motions, the trial court upheld DRA's determination that the transfers (from First Trust to First LLC and then from First LLC to Second LLC) were subject to the real estate transfer tax. *See* RSA 78-B:1. The trial court further upheld DRA's decision to tax the transfers based upon the fair market value of the subject property. *See* RSA 78-B:9 (2003). The trial court ruled, however, that DRA erred by imposing penalties on the petitioners for their failure to pay the real estate transfer taxes when due. *See* RSA 21-J:33. This appeal followed.

We review the trial court's rulings on summary judgment by considering the affidavits and other evidence in the light most favorable to the non-moving party. *See S. N.H. Med. Ctr. v. Hayes*, 159 N.H. 711, 715 (2010). If this review does not reveal any genuine issues of material fact, *i.e.*, facts that would affect the outcome of the litigation, and if the moving party is entitled to judgment as a matter of law, we will affirm. *Id*. We review the trial court's application of law to fact *de novo*. *Id*.

Resolving the issues on appeal requires statutory interpretation. In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *LaChance v. U.S. Smokeless Tobacco Co.*, 156 N.H. 88, 93 (2007).

We review the trial court's statutory interpretation *de novo*. *Estate of Gordon-Couture v. Brown*, 152 N.H. 265, 266 (2005).

When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. *LaChance*, 156 N.H. at 93. We read words or phrases not in isolation, but in the context of the entire statute and the entire statutory scheme. *Franklin v. Town of Newport*, 151 N.H. 508, 509 (2004); *Appeal of Ashland Elec. Dept.*, 141 N.H. 336, 340 (1996). When the language of a statute is plain and unambiguous, we do not look beyond it for further indications of legislative intent. *Franklin*, 151 N.H. at 509. We review legislative history to aid our analysis when the statutory language is ambiguous or subject to more than one reasonable interpretation. *Id.* at 510. We construe an ambiguous tax statute against the taxing authority rather than the taxpayer. *Pheasant Lane Realty Trust v. City of Nashua*, 143 N.H. 140, 143 (1998). However, we do not strictly construe statutes that impose taxes, but instead examine their language in the light of their purposes and objectives. *Appeal of Town of Pelham*, 143 N.H. 536, 538 (1999).

The petitioners first argue that the transfers are not subject to the real estate transfer tax because the transfers did not constitute "bargained-for exchanges" within the meaning of RSA chapter 78-B. *See* RSA 78-B:1-a, II, IV (2003), V (Supp. 2009). We disagree.

RSA 78-B:1, I(a) provides, in pertinent part: "A tax is imposed upon the sale, granting and transfer of real estate and any interest therein including transfers by operation of law." Under RSA 78-B:1, I(a), "[e]ach sale, grant and transfer of real estate, and each sale, grant and transfer of an interest in real estate shall be presumed taxable unless it is specifically exempt from taxation under RSA 78-B:2." The petitioners do not argue that the transactions at issue are specifically exempt from taxation pursuant to RSA 78-B:2 (2003).

RSA 78-B:1-a, V defines a sale, grant and transfer as "every contractual transfer of real estate, or any interest in real estate from a person or entity to another person or entity, whether or not either person or entity is controlled directly or indirectly by the other person or entity." A contractual transfer is "a bargained-for exchange of all transfers of real estate or an interest therein." RSA 78-B:1-a, II. By contrast, a noncontractual transfer is "a transfer which satisfies the 3 elements of a gift transfer: (a) [d]onative intent; (b) [a]ctual delivery; and (c) [i]mmediate relinquishment of control." RSA 78-B:1-a, III (2003).

RSA chapter 78-B does not define "bargained-for exchange." In *Petition of Lorden*, 134 N.H. 594, 600 (1991), in the context of interpreting an earlier version of RSA chapter 78-B, we explained that a bargained-for

exchange is an element of "consideration." RSA 78-B:1-a, IV defines "consideration" as "the amount of money, or other property and services, or property or services valued in money which is given *in exchange for* real estate, and measured at a time immediately after the transfer of the real estate." (Emphasis added.) Thus, the term "bargained-for exchange" as used in RSA 78-B:1-a, II is the exchange of "money, or other property and services, or property or services valued in money" for an interest in real estate. RSA 78-B:1-a, IV.

The petitioners contend that the transactions are not "bargained-for exchanges" because the parties to the transactions did not bargain at arm's length and the purchasing entities (First LLC and Second LLC) did not pay adequate value for the sales. To support these assertions, they mistakenly rely upon *Petition of Lorden*, which concerned whether the distribution of unencumbered corporate assets to stockholders upon the corporation's dissolution and liquidation was subject to the real estate transfer tax. *Petition of Lorden*, 134 N.H. at 595. We held that the distribution was not subject to the tax because even if a "transfer" took place, the stockholders gave no consideration in exchange for it. *Id.* at 599. They did not pay for the transfer of real estate in money or provide anything else in exchange for it. *Id.* at 599-600. Here, by contrast, money, or other property and services, were exchanged when First LLC purchased the property from First Trust and when Second LLC purchased it from First LLC. Moreover, following *Petition of Lorden*, the legislature specifically amended the definition of "consideration" to include "the surrender of shareholder or beneficial interest holder rights in liquidation of a corporation." Laws 1992, 203:1. Thus, on this issue, *Petition of Lorden* is no longer good law.

■ Contrary to the petitioners' assertions, bargaining at arm's length is *not required* for a transaction to constitute a "bargained-for exchange." RSA 78-B:1-a, II gives as examples of "bargained-for exchange[s]" numerous transfers that do not involve bargaining at arm's length, such as: (1) a transfer from a shareholder to a corporation in which he holds an interest, *see* RSA 78-B:1-a, II(a); (2) a transfer from a partner to the partnership in which he holds an interest, *see* RSA 78-B:1-a, II(b); (3) a transfer from a corporation to its shareholders, *see* RSA 78-B:1-a, II(e); or (4) a transfer from a partnership to its partners, *see* RSA 78-B:1-a, II(f). Additionally, RSA 78-B:1-a, V specifies that a sale, grant or transfer "means *every* contractual transfer of real estate, or any interest in real estate from a person or entity to another person or entity, *whether or not* either person or entity is controlled directly or indirectly by the other person or entity in the transfer." (Emphases added.)

■ Nor is payment of adequate value required for a transfer to constitute a "bargained-for exchange." RSA 78-B:9, III specifically gives DRA the "power, barring specific proof to the contrary, to determine the actual price or consideration by the fair market value of the real estate." Thus, if adequate value is not exchanged, RSA 78-B:9, III authorizes DRA to "determine the actual price or consideration by the fair market value of the real estate." Additionally, RSA 78-B:1-a, IV requires DRA to consider the fair market value of the property to be the consideration exchanged in certain statutorily enumerated circumstances, such as when "the property exchanged includes . . . the forgiveness of an obligation owed to the transferee, or the assumption of an obligation by the transferee."

■ Here, the transactions at issue constituted "bargained-for exchanges" because they involved the exchange of "money, or other property and services, or property or services valued in money" for an interest in the subject property. RSA 78-B:1-a, II, IV. In the first transaction, First LLC became the owner of the subject property in exchange for giving First Trust ten dollars; Second LLC became the owner of the property in exchange for giving First LLC ten dollars. In both transactions, money was exchanged for an interest in the subject property. Accordingly, both transactions constitute "bargained-for exchanges" within the meaning of the statute.

While the petitioners argue that the trial court erred to the extent that it found that the transactions constituted "bargained-for exchanges" because First LLC assumed First Trust's mortgage and Second LLC assumed First LLC's mortgage, we need not decide this issue. Even if the petitioners are correct that the old mortgages were not assumed and that new mortgages were obtained, we conclude that the transactions were "bargained-for exchanges" for the reasons set forth above.

The petitioners next assert that the trial court erred by allowing DRA to impose the real estate transfer tax based upon the subject property's fair market value. They argue that DRA may impose the real estate transfer tax based upon fair market value only under the circumstances set forth in RSA 78-B:1-a, IV, or when there is no evidence of the actual price paid for the property, see RSA 78-B:9, III. Here, they contend, because none of the circumstances set forth in RSA 78-B:1-a, IV exist and because there is evidence of the actual price paid for the property (ten dollars), DRA had no authority to base the real estate transfer tax upon the property's fair market value.

We assume, without deciding, that the circumstances set forth in RSA 78-B:1-a, IV are not present here. Accordingly, we confine our analysis to RSA 78-B:9, which grants DRA the "power to audit all real estate

transfers" in the state to "verify[] and determin[e] the existence of a sale, granting or transfer of real estate," and to "verify[ ] and determin[e] the amount of the price or consideration paid" for the transfer. RSA 78-B:9, I. RSA 78-B:9, II specifically requires DRA to "look to the substance of the transaction or series of transactions to determine if a sale, grant or transfer of real estate has occurred." Under RSA 78-B:9, III, "[i]f there is occasion to determine if the stated price or consideration is the actually paid or required to be paid price or consideration," DRA has "the power, barring specific proof to the contrary, to determine the actual price or consideration by the fair market value of the real estate."

██ We agree with the trial court that DRA reasonably relied upon RSA 78-B:9, III to determine that the actual consideration for the exchanges at issue was the property's fair market value. The stated price for each exchange was ten dollars "and other good and valuable consideration." The vague reference to "other good and valuable consideration" gave DRA occasion to conduct an audit under RSA 78-B:9 to determine if the stated ten dollar purchase price was the "actually paid or required to be paid price or consideration." RSA 78-B:9, III. In so doing, DRA reasonably could have determined that the tangible benefits afforded First Trust in the first transaction and First LLC in the second transaction far exceeded the ten dollar purchase price and that the property's fair market value more accurately reflected the actual consideration given for the exchanges. Therefore, contrary to the petitioners' assertions, DRA's use of the property's fair market value as a basis for the real estate transfer taxes imposed did not violate RSA 78-B:9.

Finally, the petitioners contend that to allow DRA to impose the real estate transfer tax upon the transactions at issue violates Part I, Article 12 and Part II, Articles 5 and 6 of the New Hampshire Constitution. They assert that to impose the real estate transfer tax when special purpose entities are used in refinancing and to decline to impose this tax when they are not used violates the constitutional command that taxation be just, uniform, equal and proportional. *See* N.H. CONST. pt. I, art. 12, pt. II, arts. 5 and 6.

██ Three provisions of the New Hampshire Constitution work in conjunction to ensure the fairness of any scheme of taxation enacted by our legislature. *Smith v. N.H. Dep't of Revenue Admin.*, 141 N.H. 681, 685 (1997). First, Part I, Article 12 establishes that "[e]very member of the community has a right to be protected by it, in the enjoyment of his life, liberty, and property; he is therefore bound to contribute his share in the expense of such protection." This article requires that a given class of taxable property be taxed at a uniform rate and that "taxes must be not

merely proportional, but in due proportion, so that each individual's just share, and no more, shall fall upon him." *Id.* at 685-86 (quotation and brackets omitted). This provision literally imposes a requirement of proportionality of a taxpayer's portion of the public expense, "according to the amount of his taxable estate" and requires that similarly situated taxpayers be treated the same. *Id.* at 686 (quotation omitted).

Second, Part II, Article 5 authorizes the General Court "to impose and levy proportional and reasonable assessments, rates and taxes, upon all the inhabitants of, and residents within, the . . . state." This section requires "that all taxes be proportionate and reasonable, equal in valuation and uniform in rate, and just." *Id.* (quotation omitted).

Third, Part II, Article 6 grants the legislature broad power to declare property to be taxable or non-taxable based upon a classification of the property's kind or use, but not based upon a classification of the property's owner. *Id.* These three constitutional provisions require that taxation be just, uniform, equal, and proportional. *Id.* A tax must be in proportion to the actual value of the property subject to tax, and it must operate in a reasonable manner. *Id.* at 687.

We hold that it does not violate these constitutional commands to impose the real estate transfer tax when an entity has transferred property to a single purpose entity in order to obtain refinancing for that property. The real estate transfer tax applies *whenever* there is a contractual transfer of real estate or an interest in real estate. *See* RSA 78-B:1, :1-a, V. The real estate transfer tax applies uniformly to all similarly situated taxpayers, that is, all taxpayers involved in a contractual transfer of real estate. The fact that the tax does not apply when a contractual transfer of real estate has not occurred, such as when an entity refinances a property without transferring the property to another entity, does not render the tax unconstitutional.

*Affirmed.*

DUGGAN, HICKS and CONBOY, JJ., concurred.